State *v.* Penley.

THE STATE *vs.* WILLIAM PENLEY.

A mere naked assertion may be a "false pretense," within the meaning of the statute with regard to obtaining goods "by color of any false token, pretense or device whatever."

An information charged that the defendant, intending to defraud another of a yoke of oxen, falsely represented to him that he owned a farm in a certain town and was worth money enough to pay for twenty such yokes of oxen. Held that the representation here charged was a false pretense within the statute.

Held also, that the information was not insufficient in not alleging, in terms, that credit was given to the representation, inasmuch as it alleged that the defendant thereby obtained the oxen.

Held also, that evidence offered by the defendant on the trial, that he was, at the time of the transaction, in good pecuniary credit and standing, was properly rejected.

INFORMATION for cheating by false pretenses.

The information alleged that, at New Milford in the county of Litchfield, on, &c., William Penley of Danbury in the county of Fairfield, contriving and intending by false pretenses to cheat and defraud one Thaddeus M. Percy, of said New Milford, of his goods and chattels, to wit: one yoke of oxen, of the value of $100, did falsely, unlawfully and designedly represent to the said Percy, that he, the said

Penley, then owned a farm in said town of Danbury, and that he was worth money enough to pay for twenty such yokes of cattle; whereas in truth and in fact the said Penley did not then own any farm in said town of Danbury, and was not worth enough to pay for twenty such yokes of cattle, or for any cattle, as he the said Penley did then and there falsely represent to the said Percy, but was then and there an utter bankrupt. And by means of the false declarations and pretenses aforesaid, the said Penley did then and there, unlawfully and designedly, obtain from the said Percy his said goods and chattels, to wit, the said yoke of oxen, of the value of $100, with the intent then and there to defraud the said Percy of the same, against the peace and contrary to the statute in such case made and provided.

On the trial to the jury on the plea of not guilty, the defendant offered evidence that, at the time when the representations were alleged to be made, he was in good pecuniary credit and standing in the community where he resided. To this evidence the attorney for the state objected and the court excluded it. In the argument of the case the counsel for the defendant claimed, and requested the court to charge the jury, that a bare, naked lie, unaccompanied by any artful contrivance, false token, or device, was not what the statute denominated a false pretense; but the court charged the jury that, if the accused made the representations set forth in the information, and for the purposes therein alleged, then the offense contemplated by the statute had been committed, notwithstanding such representations were mere naked assertions.

The jury found the defendant guilty, and he thereupon moved for a new trial, and in arrest of judgment for the insufficiency of the information, both which motions were reserved for the advice of this court.

*Sanford* and *E. W. Seymour*, in support of the motions.

1. The evidence of the pecuniary credit and standing of the defendant should have been admitted. Because, 1st. It was evidence of character, and that in the very point of

State *v.* Penley.

attack, which is always admissible. 1 Chitty Crim. Law, 627. *People* v. *Vane*, 12 Wend., 78. 2d. It conduced to show want of motive, and so to negative any proof or presumption of guilty intent. *People* v. *Herrick*, 13 Wend., 91.

2. The motion in arrest and the motion for a new trial for a misdirection may be regarded in the same view. The history of the statute sheds light upon its interpretation. *People* v. *Haynes*, 14 Wend., 571. *People* v. *Clough*, 17 Wend., 351–3, per Cowen, J. The statutes against false pretenses, though broad in their terms, are applied with numerous restrictions and limitations. 1 Bishop Crim. Law, §§ 81, 140, 433, and notes. The word *pretense*, instead of being understood in the popular sense, has obtained a legal and technical meaning. 2 Bishop Crim. Law, § 345. *McKenzie* v. *State*, 6 Eng., (Ark.,) 594. The statute means such false pretense as would be naturally equivalent to a false token. *People* v. *Haynes*, 14 Wend., 571. It does not regard mere naked lies as false pretenses. *Rex* v. *Codrington*, 1 C. & P., 661. *Rex* v. *Reed*, 7 id., 848. 2 Russell on Crimes, 282–3. *People* v. *Haynes*, supra *Commonwealth* v. *Wilgus*, 4. Pick., 177. *Commonwealth* v. *Drew*, 19 id., 185–7. *State* v. *Sumner*, 10 Verm., 587. It is undoubtedly true that, neither at common law nor under the statute, is every false representation by means of which property is wrongfully obtained, an indictable offense. *State* v. *Rowley*, 12 Conn., 108. The pretense must be such as would impose upon a person of ordinary caution and prudence. *People* v. *Stetson*, 4 Barb., 151. 3 Greenl. Ev., § 86, note 2. The representations in the information set forth are surely not of such a character, but rather calculated to put a prudent person upon his guard.

3. The information is defective because it does not show that any *credit* was given to the representations set forth. 2 Russell on Crimes, 291. 3 Greenl. Ev. § 86. *People* v. *Kendall*, 25 Wend., 399.

*Orton*, and *Sedgwick*, State Attorney, contra.

1. The information is sufficient. 3 Chitty Crim. Law, 999, 1004. 2 Russell on Crimes, 305, 307. *King* v. *Airey*,

2 East., 30. *King* v. *Perrott*, 2 Maule & Selw., 379. It is sufficiently alleged that credit was given to the false pretense, in the allegation that by means of the pretense the defendant obtained the oxen.

2. The evidence as to the pecuniary credit and standing of the defendant was properly rejected. The question was whether he in fact had the property that he represented himself to have, not whether he had good credit, or was reputed to have property. He might have good credit, and yet be in fact, as he is charged with being, an utter bankrupt.

3. The charge was correct. *State* v. *Rowley*, 12 Conn., 101. *Commonwealth* v. *Wilgus*, 4 Pick., 177. *Commonwealth* v. *Drew*, 19 id., 179. 2 Russell on Crimes, 287 *et seq.* 2 Swift Dig., 347.

SANFORD, J. The jury found the accused guilty, under the instruction of the court that, "if the accused made the representations set forth in the information for the purposes therein alleged, the offense contemplated by the statute had been committed, notwithstanding such representations were mere naked assertions;" so that the same general question is presented by the motion for a new trial on account of a supposed error in the charge, as upon the motion in arrest for the insufficiency of the information.

It is undoubtedly true that there are still, as Lord Kenyon said there were in his day, certain irregularities which are not the subject of criminal law, but we think this is not a case of that character; and, with that great judge, we desire to be understood, that "where the criminal law happens to be auxiliary to the law of morality, we feel no inclination to explain it away." *Young* v. *The King*, 3 T. R., 98. The statute, (Rev. Stat., tit. 6, § 130,) provides that "every person who shall willfully and designedly, by color of any false token, pretense, or device whatever, obtain from any person or corporation, any money, goods, chattels or other valuable thing, with intent to cheat or defraud any such person or corporation, shall be punished," &c. A false pretense is defined by Morton, J., in *Commonwealth* v. *Drew*, 19 Pick., 179, to be a

representation of some fact or circumstance calculated to mislead, which is not true—and, he adds, " to give it a criminal character, there must be a *scienter*, and an intent to defraud." The ingredients of the offense, said Thompson, C. J., in *The People* v. *Johnson*, 12 Johns., 292, and Nelson, C. J., in *The People* v. *Kendall*, 25 Wend., 400, are obtaining goods by false pretenses, with intent to defraud. 2 Russell on Crimes, 300. In this case, the fact asserted by the prisoner, that he was the owner of a farm in a neighboring town and able to pay for twenty such yokes of cattle, was well calculated to mislead the owner of the oxen and induce him to part with them. It was false, and the prisoner wickedly, designedly, and knowingly employed it to procure, and by its employment obtained, the oxen, with intent to defraud the owner of the same. All these " ingredients of the offense" are expressly charged in the information and found by the jury. It is not indeed charged in express terms that Percy gave credit to the false pretense of the accused in regard to his property and pecuniary ability, but that he did so is a necessary implication from the allegation that the oxen were obtained by means of that assertion. We think the information therefore, although exceedingly concise, not to say meager in its details and allegations—too meagre to deserve commendation—sufficient to warrant and sustain the conviction.

Pretending to be the owner of valuable property, in good pecuniary credit and condition, &c., knowing the pretense to be false, and making it with intent to defraud, and by means of it obtaining property with like intent, has often been held a false pretense, punishable under statutes like our own. *People* v. *Kendall*, 25 Wend., 399. *People* v. *Haynes*, 14 Wend., 559. 2 Bishop Crim. Law, § 360, and cases there cited.

It may be difficult to decide beforehand, what degree of artifice or depth of plot must be employed to bring the case within the operation of the statute. A mere idle tale, or a device so shallow as to be incapable of imposing upon any person, can not be indictable, because such " naked lie " can

never be *the means* by which property is obtained; but it need not be of a kind, or put forth with a degree of skill, sufficient to deceive persons of ordinary prudence and caution. In every case, attention must be given to the capacity of the individual to whom the pretense is addressed; otherwise, the benefits of the statute would be denied to a class of individuals peculiarly needing, and entitled to, its protection. 2 Bishop Crim. Law, § 358, 9, and cases there cited. Id., § 371. 2 Russell on Crimes, 299, 300.

Lastly. The prisoner complains of the rejection of the evidence which he offered to prove that he was in good pecuniary credit and standing in the community in which he resided. He claims that it was admissible, first, to show his good character in relation to the offense charged against him, and secondly, as conducing to show his pecuniary ability, and the consequent absence of motive for the commission of the offense charged, and so to rebut the proof or presumption of guilty intent.

Evidence of the good character of the accused in reference to the offense charged against him is always admissible in criminal trials, and in doubtful cases is entitled to great consideration, and not infrequently is the cause of his acquittal. But the offense charged in this case was dishonest dealing— the procurement of the property of another by false pretenses and fraudulent means. The point of attack, therefore, was the moral integrity and uprightness of the accused, as a dealer, not his pecuniary credit. Had he offered evidence that his reputation was that of a fair and honest dealer, it could not have been rejected. But the evidence offered had no tendency to show his character in that respect. Poor men, destitute of pecuniary credit and of property, are by no means the only men who procure the property of others by fraudulent practices and false pretenses. Pecuniary credit is a very different thing from moral character, and, unfortunately, too little dependent upon it to render proof of the former, evidence of the existence of the latter.

Nor was the evidence admissible to show the absence of motive for the commission of the fraud. The obvious mo-

tive was the lust of acquisition—*lucri causa*—a desire of gain. And how does evidence of the enjoyment of good pecuniary credit tend to prove the absence of this besetting passion ? Unmistakable indications of its existence and operation are but too frequently exhibited, as well by individuals in the enjoyment of credit and property, as by those who are destitute of both.

The evidence was properly rejected, and both of the motions should be overruled.

In this opinion the other judges concurred.

Motion in arrest overruled.
New trial not granted.

———— ◄◦►►◦ ————

# SUPREME COURT OF ERRORS.

## NEW LONDON COUNTY, OCTOBER TERM, 1858.

Present,

STORRS, C. J., HINMAN, ELLSWORTH, SANFORD AND PARK, JS.