PAUL BAILEY'S, INC. *v.* EDWARD J. KOZLOWSKI, COMMISSIONER OF MOTOR VEHICLES

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 5, 1974—decision released January 21, 1975

*John P. Tedeschi,* with whom was *William G. Reveley,* for the appellant (plaintiff).

*John F. Gill,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee (defendant).

HOUSE, C. J. The commissioner of motor vehicles, after reviewing the evidence produced at a hearing held at the department of motor vehicles on April 18, 1972, concluded that the plaintiff had violated the provisions of § 14-64 of the General Statutes. As a result, all licenses, general distinguishing registrations and the temporary stamp of the plaintiff were revoked for three days, it was required to post a $1000 bond and its official inspection station permit was revoked. Section 14-64 has since been amended;

Public Acts 1973, No. 73-674; Public Acts 1974, No. 74-107; but, as it read at the time of the incidents involved in this case, it provided for the imposition of these penalties by the commissioner when, after notice and hearing, it was determined that the holder of a motor vehicle dealer's or repairer's license had violated any statute pertaining to his business as a licensee or had made "any false statement as to the condition of any motor vehicle sold." In addition, the statute provided that such a person be fined not less than $25 nor more than $100.

The commissioner made four findings of fact: (1) On August 25, 1971, Harry Carter of Pawcatuck purchased a new 1971 Plymouth, identification number VL29C1B141664, from Paul Bailey's, Inc., 425 Broad Street, New London; (2) Paul Bailey's, Inc., admitted that the vehicle sold to Carter was not a new motor vehicle but was a demonstrator; (3) Paul Bailey's, Inc., testified that the incident was an honest error; and (4) Four days after the incident was brought to the attention of Paul Bailey's, Inc., the vehicle was taken back by Paul Bailey's, Inc., and Carter was paid for his loss. On the basis of these findings of fact, the commissioner reached the following conclusion of law: Paul Bailey's, Inc., violated § 14-64 of the General Statutes in that Paul Bailey's, Inc., should have known that the 1971 Plymouth was not new, inasmuch as extensive repairs were performed on the vehicle prior to the sale to Carter.

The plaintiff appealed to the Court of Common Pleas from the decision of the commissioner and its appeal was dismissed. From that judgment the plaintiff brought the present appeal to this court.

The basic facts are not in dispute. In August, 1971, Carter went to the plaintiff's place of business

and informed one of the plaintiff's salesmen that he wished to purchase a new car and asked in particular about a blue 1971 Plymouth Duster that was parked on the plaintiff's lot. The salesman represented to Carter that the Plymouth Duster was a new car and wrote up a purchase order which described the car as a new one. On the following day, Carter took delivery of the car and while driving it home noticed a shimmy in the front end of the vehicle. Carter called the salesman, reported the problem, and was told to bring the car in and it would be taken care of. He took the car to the plaintiff's place of business as directed, but was told that the salesman was not there. While he was waiting, Carter examined the car and found a misaligned front fender and repainting overspray. He then left the plaintiff's place of business and contacted his attorney who told him to take his car to the state garage at Norwich, Connecticut. As so directed, Carter took his car to the state garage where it was inspected by Sergeant Richard Cunha of the department of motor vehicles. Sergeant Cunha testified that his inspection showed that the right front fender and hood of the motor vehicle had been replaced, the body of the car showed evidence of straightening and repainting, and the tires exhibited significant wear.

The plaintiff's salesman, Frank Davies, who had been in the business of selling automobiles for fourteen years, testified that all motor vehicles on the plaintiff's lot were registered by stock number. The card on which the stock number was affixed described the motor vehicle to which the number was assigned. On the purchase order, the motor vehicle sold to Carter was listed as being registered under stock number IV 10, which number corresponded

to that of a new vehicle. On the invoice, however, the motor vehicle purchased by Carter was listed as being under stock number IV 9, a demonstrator. Nevertheless, both documents listed the car as being new. The motor vehicle registered under stock number IV 9 was described as being blue, while the motor vehicle registered under stock number IV 10 was described as being green. Davies testified that he believed the car to be a new one, but, had he looked at the vehicle more closely, he would have discovered its true condition. He claimed that he had made a mistake in pulling the wrong card from the file, that he had on hand three cars of the same make, model and color, and that a "lot" worker had moved the car sold to Carter from the body shop to the new car lot.

On its appeal the plaintiff has assigned as error the court's conclusion that there was ample evidence of a false statement having been made in violation of § 14-64 because, it asserts, there was no evidence of an intention to mislead on the part of the plaintiff. It further claims that in finding a violation of § 14-64 the commissioner used a standard not set forth in the statute and, accordingly, exceeded his authority and acted illegally and in abuse of his discretion.

It is not the function of the court on review to retry the case or to substitute its judgment for that of the commissioner as to the weight of evidence on questions of fact. The court, however, may reverse or modify his decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are in violation of statutory provisions, because they are in excess of his statutory authority or are affected by other error of law, or because they are

characterized by abuse of discretion or are clearly an unwarranted exercise of discretion. General Statutes § 4-183.

Section 14-64 is penal in nature and, accordingly, the principle of strict construction applies. *Fitzpatrick's Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 416, 419, 334 A.2d 476; *State* v. *Cataudella,* 159 Conn. 544, 555, 271 A.2d 99. This principle of law is applicable in this case to a determination of the meaning of the term "false statement" as used in § 14-64. We discussed the term in the same context in *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 564, 345 A.2d 520. There, in quoting from *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 A. 974, we noted: " ' "False" may mean untrue, or it may mean designedly untrue, implying an intention to deceive. When applied to the representations of one inducing an act to another's injury, it implies a purpose to deceive.' " In the *Sallies* case, ibid., quoting from Webster's New International Dictionary, we approved the definition of " 'false representation' " as " 'an untrue representation willfully made to deceive another to his damage' " and noted that "this is the approved definition and accords with the common understanding." Ballentine's Law Dictionary (p. 455) defines the meaning of the words "false statement" as "[a] statement which is false. For most purposes of the law, a statement which is wilfully false." Corpus Juris Secundum, volume 35, False, notes (p. 614) that "[i]n the more important uses in jurisprudence, and even in its popular application, the word implies something more than a mere untruth, that is an untruth coupled with a lying intent; and this is described as the primary meaning of the word, importing moral delinquency,

or somewhat more than the vernacular sense of erroneous or untrue; and implying an evil, or a guilty intent, an intent to deceive, or an intention to perpetrate some treachery or fraud, including not only the element of error, but also that of intentional wrong." See also *State* v. *Penley*, 27 Conn. 587, 590.

*Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles*, supra, established that proof of a violation of § 14-64 by the making of a false statement requires proof of a mental element—a purpose or intent to deceive. It is thus an offense requiring a specific intent. See *State* v. *Bitting*, 162 Conn. 1, 5, 291 A.2d 240; *State* v. *Husser*, 161 Conn. 513, 515, 290 A.2d 336. Intent may be and usually is inferred from conduct. Of necessity, it must be proved by the statement or acts of the person whose act is being scrutinized and ordinarily it can only be proved by circumstantial evidence. *State* v. *Cofone*, 164 Conn. 162, 164, 319 A.2d 381.

These considerations are relevant to the assignments of error pressed by the plaintiff and our decision on the merits of this appeal. It is unquestioned that the representation that the car sold to Carter was a new car was untrue, but, as the plaintiff properly asserts, there is no finding by the commissioner that the statement, although untrue, was made with an intent to deceive Carter or was made with the knowledge that the statement was untrue. The plaintiff claimed that the representation was an honest error and that it did not know that the statement was untrue. The commissioner made no finding and reached no conclusion that the plaintiff had any purpose to deceive or that it knew that the statement was untrue. The commissioner went no further than

to find that the representation was made and to conclude that the plaintiff "should have known" that the car was not new.

We would not suggest that the evidence considered by the commissioner was not sufficient for him to have concluded that the plaintiff did in fact know that the car was not new and to have inferred that the representation was made with this knowledge and with the intent to deceive Carter by inducing him to purchase a used car in the belief that it was a new one. We go no further than to note that the finding and the conclusion of law filed by the commissioner do not disclose that he reached such conclusions and, accordingly, hold that his finding and his conclusion of law do not support his ultimate conclusion that the plaintiff violated the provisions of § 14-64 by making a false statement.

There is error, the judgment is set aside and the case is remanded with direction to sustain the plaintiff's appeal.

In this opinion the other judges concurred.