STATE OF CONNECTICUT *v.* SAMUEL J. TEDESCO

LOISELLE, BOGDANSKI, PARSKEY, DALY and SPONZO, Js.

Argued March 21—decision released June 13, 1978

*Bernard S. Peck*, with whom were *Daniel D. Peck, Richard A. Johnson,* and, on the brief, *Salvatore C. DePiano,* for the appellant (defendant).

*Joseph T. Gormley, Jr.,* chief state's attorney, for the appellee (state).

BOGDANSKI, J. The defendant was charged in an information with the crime of falsely certifying as to the administration of an oath, in that on June 2, 1975, the defendant falsely certified that he had administered an oath to Michael Altieri in an application for the renewal of a liquor permit which application was required by § 30-39 (a) (1)[1] of the General Statutes to be sworn to under oath, in violation of § 53-368[2] of the General Statutes. On a trial

---

[1] "[General Statutes] Sec. 30-39. APPLICATION FOR PERMITS, FEES. PUBLICATION. REMONSTANCE, HEARING. (a) (1) Any person desiring a liquor permit or a renewal of such a permit shall make a sworn application therefor to the commission upon forms to be furnished by the commission . . . ."

[2] "[General Statutes] Sec. 53-368. FALSELY CERTIFYING AS TO ADMINISTRATION OF OATH. Any person authorized by the laws of this state to administer oaths and affirmations, who falsely certifies that an oath or affirmation has been administered by him to any person in any matter where an oath or affirmation is by law required or falsely certifies that any affidavit, deposition or written statement of any kind required by law to be made upon oath or affirmation has been sworn or affirmed to before him by the person making such affidavit, deposition or written statement in any case where the same is required by law to be made, shall be fined not more than one thousand dollars or be imprisoned not more than three years or both."

to a jury, the defendant was found guilty, fined $250, and summarily disbarred from the practice of law. From the judgment rendered, he appealed to this court.

From the evidence presented, the jury could have found the following facts: On December 15, 1972, a limited partnership calling itself the Candlewood Valley Country Club Associates (club) was formed. Its purpose was to own and operate a country club in New Milford, Connecticut. The partnership, organized by Lidizio Renzulli, consisted of two groups of investors besides Renzulli: one group consisting of friends and relatives of Henry Gropper, and another group consisting of the relatives of the defendant. The members of the latter group, who invested a total of $73,500 in the partnership, were J. Ralph Tedesco, the defendant's son; Jane Tedesco, his mother; Betty Aurillio, his sister; and Louis Tedesco, his brother. The partners of record were Lidizio Renzulli, J. Ralph Tedesco, and Frances Gropper; however, the persons who attended partnership meetings were Henry Gropper, Renzulli and the defendant. The total investment of the partnership was approximately $870,000. The partnership executed two mortgages, one for $30,000 and one for $325,000. On the mortgage of $325,000, the defendant and his wife guaranteed upon default one-third of the amount loaned. The partnership, however, soon encountered financial difficulties. Its mortgage obligations were in default and J. Ralph Tedesco loaned an additional $27,800 to the partnership.

In December, 1972, Renzulli applied for a liquor permit for the club. The application listed the club as the backer and Renzulli as the permittee. The

liquor control commission approved the application and issued a permit on May 25, 1973, effective until May 25, 1974. On June 21, 1973, the commission received an application requesting that Michael Altieri be made the substitute permittee. The substitution was authorized on August 8, 1973, effective until May 25, 1974.

In February of 1974, the commission sent notice of revocation because of an alleged violation of § 30-48 of the General Statutes in that credit had been extended for more than thirty days. The matter was set down for a hearing at which no one appeared, and the permit was revoked. No one appeared because the club had closed for the winter and the notice of the hearing had not been received. Altieri, however, learned of the revocation when he met with a liquor commission inspector in March of 1974. Altieri then wrote the commission stating he had not worked at the club since September, 1973, and that he did not intend to return. Renzulli, upon learning of the revocation, wrote the commission explaining the failure to appear and requested the commission to open the revocation. The commission did open the revocation.

In May, 1974, the club took steps to renew its permit. Altieri was still listed as the permittee. Prior to May 30, 1974, Renzulli had Altieri sign a form which Altieri believed would clear his name off the liquor permit. Altieri did not read the form before he signed it. The renewal application listing Altieri as permittee was approved on June 18, 1974, and was effective until May 24, 1975.

In May of 1975, the club again sought to renew its permit. Because Altieri was still the permittee of record, his signature was required on the renewal

application. Renzulli phoned Altieri and asked his permission to sign a liquor commission form. Altieri gave his permission but was unsure as to what form was involved. Altieri never saw or signed the 1975 renewal form and never swore to the truth of its contents.

On June 2, 1975, Renzulli went to the defendant's office and asked him to notarize a liquor license renewal application. Renzulli told the defendant that Altieri had authorized him to sign Altieri's name as permittee on the 1975 renewal application. At the defendant's request, Renzulli made a phone call to someone, allegedly Altieri, to confirm the authorization. The defendant did not talk to Altieri, and Altieri was not present in the room. Renzulli then signed Altieri's name in the box marked "permittee." The defendant testified that he then administered an oath to Renzulli concerning the truth of the statements on the renewal form. Renzulli did not testify at the trial.

I

The defendant claims that the appeal should be remanded with direction to dismiss the information on the ground that the commission lacked jurisdiction to act on the 1975 renewal application which contained his certification. He contends (1) that the renewal of June 18, 1974, was invalid because the commission acted improperly in opening the revocation of February, 1974, and because the 1974 renewal was issued after the expiration date of the prior permit; (2) that the 1975 renewal was "void" because the 1974 permit it purported to renew was invalid and because the 1975 renewal application was filed untimely; and (3) that Altieri's oath was

not required by law because the renewal application was ineffective and because the commission had no jurisdiction to grant the 1975 permit.

Ordinarily, an administrative agency may not review its own decisions and revoke action once duly taken. However, where a change of conditions has occurred or considerations have arisen materially affecting the merits of the matter and no vested rights have intervened, an agency may properly review its decision. *Hoffman* v. *Kelly*, 138 Conn. 614, 616–17, 88 A.2d 382; *Dylag* v. *Brennan*, 128 Conn. 304, 22 A.2d 635; *Middlesex Theatre, Inc.* v. *Hickey*, 128 Conn. 20, 20 A.2d 412; *Olivieri* v. *Bridgeport*, 126 Conn. 265, 269–70, 10 A.2d 770; *Kowalski* v. *New York, N.H. & H. R. Co.*, 116 Conn. 229, 234–35, 164 A. 653; *St. Patrick's Church Corporation* v. *Daniels*, 113 Conn. 132, 154 A. 343; 2 Am. Jur. 2d, Administrative Law, § 520 et seq.; annot., Administrative Decision—Reopening, 73 A.L.R.2d 939.

The fact that a renewal permit is issued after the expiration date of a prior permit does not affect the validity of the granted permit. There was testimony before the jury that the commission's regulations, requiring that renewal applications be filed twenty-one days before the expiration date, were enacted for the convenience of the commission. If renewal applications were received untimely but prior to expiration, they were routinely accepted and acted upon by the staff. If renewal applications were received after the expiration date, only the commission itself could take action on the renewals.

Time limitations as contained in the commission's regulations are designed to secure order, system and dispatch, and are directory, not mandatory.

*State* v. *White,* 169 Conn. 223, 238, 363 A.2d 143; *State ex rel. Arcudi* v. *Iassogna,* 165 Conn. 203, 205, 332 A.2d 90; *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75, cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270. "It is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party." *National Labor Relations Board* v. *Monsanto Chemical Co.,* 205 F.2d 763, 764 (8th Cir. 1953); *American Farm Lines* v. *Black Ball Freight Service,* 397 U.S. 532, 536, 90 S. Ct. 1288, 25 L. Ed. 2d 547. A further reason for the validity of such an agency's action is that a renewal is not an extension of the term of the original permit but is actually a new permit. *Newington* v. *Mazzoccoli,* 133 Conn. 146, 150, 48 A.2d 729.

The state claims that because the commission is the only state agency which can act on liquor permits, the filing of the 1975 renewal application gave the commission jurisdiction to act, and that the oath in question was required by law whether the renewal should or should not have been granted. The defendant claims that if the 1975 renewal application was insufficient or defective for any reason, the commission would lack jurisdiction to act on the renewal in which case the oath in question would not be required by law.

In *United States* v. *Williams,* 341 U.S. 58, 71 S. Ct. 595, 95 L. Ed. 747, the defendants committed perjury in the course of a trial. On appeal, the indictment forming the basis for the trial was found to be defec-

tive. The defendants claimed that their perjury at the trial could have no effect because the indictment was faulty. The court disagreed, ruling that the invalidity of the indictment was no defense to the perjury committed during the trial as the court still had jurisdiction to try the case. The court went on to say: "The effect of the alleged false testimony could not result in a miscarriage of justice in this case but the federal statute against perjury is not directed so much at its effects as at its perpetration; at the probable wrong done the administration of justice by false testimony." *United States* v. *Williams,* supra, 68; see *West* v. *United States,* 258 F. 413, 416 (6th Cir. 1919). "[W]here a court or administrative body is dealing with a controversy of the kind it is authorized to adjudicate, and has the parties before it, it has jurisdiction. And jurisdiction does not depend upon the regularity of the exercise of its power or the correctness of decisions made." *Thermoid Western Co.* v. *Union Pacific R. Co.,* 12 Utah 2d 256, 259, 365 P.2d 65.

The defendant's reliance upon the case of *United States* v. *Bithoney,* 472 F.2d 16 (2d Cir. 1973) is misplaced. In that case, the defendant attorney was charged with making a false certification that the affiant had appeared before him and had taken an oath. The court held that the trial had to take place in Buffalo where the crime was completed upon the filing of the affidavit rather than in Boston where the attorney had signed the false certification, and that, because the agency in Buffalo had the power to decide the matter, that agency had jurisdiction over the filed affidavit. Likewise, in the present case, once the renewal application was filed with the commission at Hartford, the commission had jurisdiction to act and the oath in question was

required by law. We conclude that the concept advanced by the defendant that jurisdiction over an application, even though properly filed with the administrative agency, is dependent upon the ultimate sufficiency of the application, is untenable.

Moreover, the permit was valid as to the commission, the club, and the permit holder because the parties had agreed to the procedure, and the defendant has no standing to object since when making the certification he knew the application would be filed with the commission in Hartford for action thereon.

## II

The defendant asserts that he administered the oath to Renzulli as the agent of Altieri. He testified that Renzulli phoned Altieri in his presence, that Altieri authorized Renzulli to sign his name, that Renzulli signed Altieri's name, and that the defendant then administered the oath.

It is true that a principal may delegate to an agent all that he himself can do except acts "peculiarly personal" or acts "regulated by statute which are required to be performed personally." *Zeeb* v. *Atlas Powder Co.*, 32 Del. Ch. 486, 493, 87 A.2d 123; see *State ex rel. Hansen* v. *Schall*, 126 Conn. 536, 541–42, 12 A.2d 767; Restatement 2d, Agency, § 17. The taking of an oath is an act which may not be delegated to an agent. By its very definition, an oath must be administered personally. Section 30-39 (a) (1) requires that the permittee desiring a renewal shall make a sworn application to the commission—clearly an act required by law to be performed personally.

The defendant argues that because he thought he was proceeding legally there was no "false" certification. It is true that an honest mistake of fact in the doing of an act or in the making of a representation may negate the criminal nature of the act. *Beckanstin* v. *United States,* 232 F.2d 1, 3–4 (5th Cir. 1956); *United States* v. *Rose,* 215 F.2d 617, 623 (3d Cir. 1954).

A mistake of law, however, even if it is assumed to be honest, is not a valid defense. *Yellin* v. *United States,* 374 U.S. 109, 123, 83 S. Ct. 1828, 10 L. Ed. 2d 778; *Sinclair* v. *United States,* 279 U.S. 263, 299, 49 S. Ct. 268, 73 L. Ed. 692; *Armour Packing Co.* v. *United States,* 209 U.S. 56, 86, 28 S. Ct. 428, 52 L. Ed. 681; 21 Am. Jur. 2d, Criminal Law, § 94.

The defendant claims that § 53-368 is void for vagueness because the word "falsely" is subject to different interpretations. The test for vagueness is whether the statute gives "adequate warning of what activities it proscribes." *Broadrick* v. *Oklahoma,* 413 U.S. 601, 607, 93 S. Ct. 2908, 37 L. Ed. 2d 830. "[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned* v. *City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222.

An examination of § 53-368 reveals that its language is sufficiently explicit to guide persons of ordinary intelligence. In plain language it prohibits one authorized to administer oaths from falsely certifying that he has administered an oath which is required by law when he had not done so. When that forbidden act is done and the certified docu-

ment is duly filed, a false certification has occurred precisely as contemplated and prohibited by the statute.

The defendant also claims that he should have been charged with the second part of § 53-368 rather than the first part because the second part is more specific. See footnote 2. "We have always held that prosecutors have broad discretion in determining what crime or crimes to charge in any particular situation. *State* v. *Villafane*, 171 Conn. 644, 664, 372 A.2d 82; *State* v. *Townsend*, 167 Conn. 539, 554, 356 A.2d 125." *State* v. *Chetcuti*, 173 Conn. 165, 168, 377 A.2d 263. Where criminal offenses overlap, the state is entitled to choose between them so long as its action does not discriminate against any class of defendants. *State* v. *Chetcuti*, supra, 168. For example, if an assault is committed with a firearm, no claim can ordinarily be made that a defendant must be charged with that offense rather than with plain assault.

## III

During the trial the state offered the testimony of Frances Gropper to the effect that the signature of "Frances Gropper" appearing as a backer on the 1975 renewal was not hers and that she did not give permission to anyone to sign her name or to swear on her behalf. The defendant claims error in the admission of that testimony. The parties stipulated that the certifications on the back of the 1975 renewal application, including the certification next to "Frances Gropper," were those of the defendant.

Mrs. Gropper's testimony was admissible under the similar acts doctrine. "Upon questions of knowledge, good faith or intent, any other transactions from which any inference respecting the [motive]

may be drawn are admissible." *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 37; *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 250, 268 A.2d 391; *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 546, 102 A.2d 366.

As already noted, the defendant's principal claims at the trial were that Renzulli was the agent of Altieri, that the defendant acted in good faith, and that there was no false certification because the defendant did not intend to mislead the commission. It cannot be questioned that Frances Gropper's testimony had probative value to negate those claims. Her testimony that the signature purportedly hers was not hers, that she did not sign it, that she gave no one permission to sign it, and that she did not swear to anything nor give anyone permission to swear for her, was clearly admissible on the issue of the defendant's state of mind.

If the evidence is independently probative, the fact that it may also tend to prove the commission of other crimes does not render it inadmissible. *State* v. *Hauck,* 172 Conn. 140, 144, 374 A.2d 150; *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756. The trial court must determine, in the exercise of its discretion, whether the probative value of the evidence outweighs its prejudicial tendency. *State* v. *Hauck,* supra; *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219; *United States* v. *Cifarelli,* 401 F.2d 512, 514 (2d Cir. 1968). In determining whether there has been an abuse of discretion the court should apply every reasonable presumption in favor of the correctness of the court's ruling. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303

A.2d 709. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62. On the state of the evidence before it, we cannot rule that the court abused its discretion in allowing the testimony.

## IV

The defendant's final claim which we find dispositive of the appeal concerns the court's refusal to charge as requested that "falsely" as used in the statute requires that the certification be made with an intent to deceive.

Under General Statutes § 53-368 the false certification of an oath required by law is a felony as is the crime of perjury. See § 53a-156. Criminal statutes must be strictly construed. *Fitzpatrick's, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 416, 419, 334 A.2d 476; *State* v. *Cataudella,* 159 Conn. 544, 555, 271 A.2d 99. The use of the word "falsely" in the statute is of significance. In the vernacular it may mean untrue or designedly untrue, implying an intent to deceive. Webster's Third New International Dictionary. In jurisprudence, however, the word "false" implies something more than mere untruth: it imports knowledge and a specific intent to deceive. *Paul Bailey's, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 493, 497–98, 356 A.2d 114; *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 564, 345 A.2d 520; *State* v. *Fasano,* 119 Conn. 455, 461, 177 A. 376; *Salt's Textile Mfg. Co.* v. *Ghent,* 107 Conn. 211, 215, 139 A. 694; *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 A. 974; *State* v. *Penley,* 27 Conn. 587, 590; 35 C.J.S. 613, 614. Thus, the use of the word "false" in § 53-368

imports a requirement of a specific intent to deceive. See *Paul Bailey's, Inc.* v. *Commissioner of Motor Vehicles,* supra.

Because a specific intent to deceive is an essential element of the crime charged in the present information, and because the circumstances under which the defendant claimed Renzulli's oath was taken might have had the effect of negating that intent in the minds of the jury, we conclude that the court's failure to charge as requested respecting such specific intent constituted reversible error.

## V

At the time of imposing sentence, the court noted that it had advised the defendant's attorney of possible disciplinary action shortly after the verdict was returned and that the defendant had unsuccessfully brought an action in federal district court to enjoin disbarment. *Tedesco* v. *O'Sullivan,* 420 F. Sup. 194 (D. Conn. 1976). The defendant's attorney vigorously opposed disbarment contending that § 21, not § 20, of the 1963 Practice Book was applicable. The court nevertheless summarily disbarred the defendant pursuant to § 20 of the 1963 Practice Book.

Discipline of attorneys in Connecticut is governed by §§ 19 through 21 of the 1963 Practice Book. Section 19 provides that the Superior Court may discipline attorneys for just cause. Section 20 provides that if such cause occurs in the actual presence of the court, the order of discipline may enter without a complaint or a hearing, and requires that a record be made reciting the ground for the order. Section 21 provides that if the alleged misconduct does not

occur in the actual presence of the court, a written complaint is required, and the proceeding shall be treated as a civil action, in which case the defendant has the right to answer the complaint and offer testimony.

The defendant contends that the summary procedure under § 20 is inapplicable to convictions as distinguished from misconduct occurring in the actual presence of the court. He urges that because disbarment is a severe and extreme sanction that deprives a defendant of his livelihood and because disciplinary proceedings for misconduct not occurring in the actual presence of the court are governed by § 21, mandating a written complaint and hearing,[3] it was error for the court to act pursuant to the summary procedure of § 20.

This court has not been confronted with the question of whether § 20 of the 1963 Practice Book authorizes summary disciplinary action upon conviction of a crime. As already noted, that section authorizes summary action for "such cause" as occurs "in the actual presence of the court." The language of § 20 is broad enough to be construed as authorizing a sentencing judge to discipline an attorney convicted of any offense, whether it be a felony or not, and whether the offense involves moral turpitude or not.

---

[3] The legislature has since enacted Public Act No. 77-194, effective May 20, 1977, requiring a hearing on all disbarments and suspensions of attorneys. "The superior court shall not suspend or disbar any attorney-at-law admitted to practice in this state unless a written complaint has been made and a hearing held thereon as is provided by rule of court unless such complaint or hearing is waived by such attorney, notwithstanding that the alleged misconduct or alleged cause for such suspension or disbarment occurred in the presence of the court."

Section 21, however, which outlines the procedure to be followed for disciplinary action, makes its provisions applicable for "misconduct not occurring in the actual presence of the court." The wording of § 21 indicates that its procedures for notice and hearing can be dispensed with under § 20 *only* if the "misconduct" occurs in the actual presence of the court. In our view, the contemplated act of misconduct cannot be the conviction; rather, it is the act of misconduct which underlies and ultimately leads to the conviction. Indeed, the conviction can more properly be said to be the ultimate and combined action of the court and jury. Moreover, § 20 itself specifies that when it is used for a summary order, "a record shall be made of such order, reciting the ground thereof." That requirement further indicates that the summary procedure in § 20 must be limited to misconduct occurring in the actual presence of the court.

We conclude that the summary disciplinary procedure provided in § 20 of the 1963 Practice Book is available for misconduct occurring in the actual presence of the court only, and not for a conviction evidencing misconduct elsewhere. The trial court erred in ruling otherwise.

There is error as to the judgment on the merits and error as to the order of disbarment; the judgment and the order are set aside and the case remanded for a new trial.

In this opinion the other judges concurred.