[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Martha Ross on behalf of her minor child Richard Ross, appeals a final decision of the defendant, Commissioner of the Department of Social Services ("DSS"), upholding the denial of medicaid coverage by CT Page 11240 Anthem Blue Cross and Blue Shield ("Anthem") for four chiropractic visits by Richard Ross from September through December 1999.[1] The plaintiffs appeal is authorized by General Statutes §§ 17b-61 (b) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
On September 9, 1999, Anthem declined permission for medical insurance coverage for the four medical visits. Subsequently, on October 4, 1999, the plaintiff requested an administrative hearing of this denial with DSS. A hearing was held on January 24, 2000 before a hearing officer of DSS who made the following findings of fact:
 1. The Appellant six-year-old son is a BlueCare Family Plan member. . . .
 2. The Appellant's son has been seeing a chiropractor for treatment of "subluxation sacrum and C1" since January 18, 1997. . . .
 3. On April 12, 1999, the Appellant's son fell out of bed. He was referred for chiropractic care by his primary care physician for diagnosis of "dislocation, first cervical vertebra". . . .
 4. On April 14, 1999, Westside Chiropractic called the Utilization Management Department requesting authorization for two visits for Ricky for the diagnosis of "closed dislocation, lumbar vertebra." The chief complaint indicated by the provider was "headache." There was no mention of enuresis/encopresis in this request. . . .
 5. On April 15, 1999, the Utilization Management Department approved coverage for two chiropractic visits for Ricky. . . .
 6. On May 20, 1999, Westside Chiropractic requested four additional chiropractic visits for Picky. The provider identified as "cervical and lumbar sprain" as the condition. There was no mention of enuresis/encopresis in this request. . . .
 7. On May 21, 1999, BlueCare Family Plan chiropractic consultant approved four additional visits due to "medical necessity and continue to address residual and bring case to maximum medical improvement". . . . CT Page 11241
 8. On September 9, 1999, Westside Chiropractic requested approval for four additional chiropractic visits. The chief complaint listed was "low back pain." The request identifies encopresis as an "other medical condition". . . .
 9. On September 24, 1999, Anthem Blue Cross and Blue Shield determined that the "care [is] ongoing and without substantiated clinical basis . . . care appears to be non-curative/palliative. . . ." The request was denied. . . .
 10. On October 6, 1999, Anthem Blue Cross and Blue Shield received the Appellant's request for a review of the denial for four additional chiropractic visits. . . .
 11. On October 8, 1999, the BlueCare Family Plan chiropractic consultant upheld the September 24th
denial. . . .
 12. On November 10, 1999, the BlueCare Family Plan received records from Dr. Vallone, Ricky's chiropractor. . . .
 13. On November 12, 1999, the Chiropractic consultant found that treatment "beyond this init (sic) care appears in med prob. (sic) by [history diagnosis] and clinical to be maintenance". . . .
 14. Picky has had an enuresis/encopresis episode less than ten days following chiropractic treatment. . . .
 15. The record does not show that absence of chiropractic treatment has brought about a recurrence of episodes. . . .
(Return of Record ("ROR"), Volume I, pp. 2-3.)
The hearing officer concluded that Anthem was correct in refusing authorization for the four chiropractic treatments for Ricky. The proposed visits were not medically necessary[2], because the chiropractic approach to Ricky's enuresis and encopresis problem has not been an effective short-term treatment. The treatment has not made any significant difference. "Ricky has received chiropractic treatments since January 1997 and the Appellant's testimony indicates that this approach CT Page 11242 has not been short-term and has not provided the desired response, bowel and bladder control." (ROR, Volume I, p. 5.)
The plaintiff now appeals the DSS hearing officer's decision to this court. The first issue on appeal that the court must consider is whether the plaintiff is aggrieved. The plaintiff alleged that she was denied medical insurance coverage for the four chiropractic visits (Complaint, pp. 2-3, ¶ 4); and the record supports this allegation. (ROR, Volume I, pp. 11-13.) DSS contends, however, that Picky, as a qualified medicaid recipient, cannot be subject to suit for refusing to pay the medical provider; and therefore, the plaintiff is not aggrieved.
Subsection (a) of General Statutes § 4-183 provides the right to an administrative appeal to "a person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision. . . ." (Emphasis added.) "[I]n order to have standing to bring an administrative appeal, a person or entity must be aggrieved. . . . Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact. . . . Pleading and proof of facts that constitute aggrievement are essential prerequisite to the trial court's subject matter jurisdiction over an administrative appeal. . . . In the absence of aggrievement, an administrative appeal must be dismissed for lack of subject matter jurisdiction. . . ." (Citations omitted; internal quotation marks omitted.) New England RehabilitationHospital of Hartford, Inc. v. CHHC, 226 Conn. 105, 120 (1993).
"The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 103 (1998).
Looking to the injury prong of the aggrievement test, Picky received the four treatments, as the chiropractor agreed to provide her services even though Anthem denied permission for payment. (ROR, Volume I, p. 26; Plaintiffs Brief, p. 2.) As a general rule, as a qualified medicaid recipient, neither Ricky nor his family can be liable to the provider in a subsequent suit. Amsterdam Memorial Hospital v. Cintron,52 App.Div.2d 404, CT Page 11243384 N.Y.S.2d 225 (1976); Banks v. Indiana Family Soc. Serv.,997 F.2d 231, 243 (7th Cir. 1993). In In re Helman, 579 N.E.2d 542,61 Ohio Misc.2d 382 (Ohio Ct.Cl. 1989), however, the court found the right to sue a recipient when he was informed in advance of treatment in writing that services were not covered by Medicaid and that any acceptance of services could lead to direct suit for payment. Here, the plaintiff has been rejected in the pre-clearance process; the possibility of a future lawsuit by her chiropractor exists. Therefore, aggrievement is found.
Addressing the merits, on the finding of aggrievement, the first ground of the plaintiffs complaint is that the hearing officer used too strict a standard in determining Picky's eligibility for treatment. It is claimed that the hearing officer would not find a medical necessity for the treatment as it was only "palliative and not curative care." (Plaintiffs Brief, p. 10.)
The plaintiff misreads the conclusions of the hearing officer. He states that even if the proposed treatments were "a maintenance protocol," he must affirm the denial of coverage by Anthem because "this approach has not been effective." (Emphasis added.) (ROR, Volume I, p. 4.) Thus, the hearing officer is not using a standard, as the plaintiff claims, that classifies "medically necessary" as requiring a "cure." The appropriate standard as set forth in the regulation, and as applied by the hearing officer, requires that a continued course of treatment medically assist the patient, regardless of whether it is to resolve the condition or to merely alleviate its effects. See Wolan v. Thomas, Superior Court, judicial district of New Haven at New Haven, Docket No. 404219 (March 30, 1998, McWeeny, J.) (device was not medically necessary; did not rectify condition of patient); Peterson v. Utah Dept. of Health,969 P.2d 1, 357 Utah Adv.Rep. 24 (Utah App. 1998) (treatments require showing of effectiveness for finding of medical necessity).
The plaintiff also claims that the hearing officer's factual conclusions were in error. In deciding this issue the court applies the substantial evidence test. The court reviews the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the Uniform Administrative Procedure Act ("UAPA"). Dolgner v.Alander, 237 Conn. 272, 280 (1996). "The scope of permissible review is governed by § 4-183 (j) and is very restricted. See Cos Cob VolunteerFire Co. No. 1, Inc. v. Freedom of Information Commission, 212 Conn. 100,104, 561 A.2d 429 (1989); New Haven v. Freedom of InformationCommission, 205 Conn. 767, 774, 535 A.2d 1297 (1988). . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the defendant. CH Enterprises, Inc. v. Commissioner of Motor Vehicles,176 Conn. 11, 12, 404 A.2d 864 (1978); DiBenedetto v. Commissioner ofCT Page 11244Motor Vehicles, 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (g). New Haven v. Freedom of InformationCommission, supra, 773. The conclusion reached by the [agency] must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the [agency], [the court] cannot disturb the conclusion reached by [the agency]. Hart Twin VolvoCorporation v. Commissioner of Motor Vehicles, 165 Conn. 42, 49,327 A.2d 588. See Paul Bailey's, Inc. v. Kozlowski, 167 Conn. 493,496-97, 356 A.2d 114 (1975). Lawrence v. Kozlowski, 171 Conn. 705, 708,372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930,53 L.Ed.2d 1066 (1977). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its orders, acted unreasonably, arbitrarily, illegally or in abuse of its discretion.Dolgner v. A lander, supra, 237 Conn. 280-81." (Footnote omitted; internal quotation marks omitted.) Domestic Violence Services of GreaterNew Haven, Inc. v. FOIC, 47 Conn. App. 466, 469-70 (1998).
The plaintiff states that the hearing officer erred in finding the chiropractic treatments ineffective. She relies upon her own testimony in the record that as each incident of incontinence arose, she brought Picky to the chiropractor for treatment and the condition resolved itself (ROR, Volume II, p. 26.) On the other hand, Robert Stern, a chiropractor and advisor to Anthem, testified on behalf of DSS that: "If the condition, after two and a half years or whatever it is, still continues to return, my position is the treatment, the specific treatment, is not effective in maintaining the patient's health." (ROR, Volume II, p. 27.) Under the substantial evidence standard of review, there is substantial evidence in the record to support the finding of the hearing officer regarding effectiveness of treatment. Dore v. Commissioner of MotorVehicles, 62 Conn. App. 604, 611 (2001) (hearing officer may agree with or reject both expert and non-expert testimony).
Therefore, the appeal is dismissed.
Henry S. Cohn, Judge