# Third District Court of Appeal

## State of Florida

Opinion filed January 12, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1656
Lower Tribunal No. 17-12003
_____

**Yolanda Vargas,**
Appellant/Cross-Appellee,

vs.

**Safepoint Insurance Company,**
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Giasi Law, P.A., and Melissa A. Giasi and Erin M. Berger (Tampa), for appellant/cross-appellee.

Bickford & Chidnese, LLP, and Andrew L. Bickford and Patrick M. Chidnese (Tampa); Bressler, Amery & Ross, P.C., and Hope C. Zelinger and Krista L. Elsasser, for appellee/cross-appellant.

Before EMAS, LOGUE and SCALES, JJ.

LOGUE, J.

Yolanda Vargas appeals the trial court's entry of final summary judgment for Safepoint Insurance Company. This first-party property insurance case turns on the interpretation of an insurance policy's "Concealment or Fraud" provision providing for forfeiture of coverage when an insured makes "false statements relating to this insurance." The insured's statement at issue arose post-loss: she denied making prior similar claims when, in fact, she had made and been reimbursed for a similar claim from another insurance company. Yet the insured maintains that her misstatement was innocent because she had forgotten the prior claim. The question is whether the term "false statement" in this post-loss context means (1) "incorrect statement" or (2) "intentionally incorrect statement." We conclude the term "false statement" in this post-loss context includes an element of intent to mislead, which, in this case, involves a genuine issue of material fact. Accordingly, we reverse.

## Factual and Procedural Background

Vargas and Safepoint entered into a property insurance contract. Pertinent to this appeal, the contract included the following provision:

3. **Concealment or Fraud.**
   With respect to all persons insured under this policy, we provide no coverage for loss if, whether before or after a loss, one or more persons insured under this policy have:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made material false statements relating to this insurance.

Vargas reported a loss to Safepoint resulting from water damage due to a plumbing leak. Safepoint's corporate representative testified that Safepoint immediately requested repair invoices from any prior claims and photographs of the pre-loss condition of the property. Vargas never provided this information. Instead, Vargas submitted a sworn proof of loss with an itemized estimate of her damages prepared by a claim consultant.

After conducting its own investigation, Safepoint denied coverage and Vargas initiated this suit. Safepoint served Vargas with its first set of interrogatories asking Vargas to disclose any previous claim made on the property. Vargas responded by recalling a roof claim made ten years prior. Vargas did not disclose any prior claims involving water damage. In her deposition, Vargas stated that she had not made any prior insurance claims involving a plumbing leak on the property.

After receiving these answers, Safepoint added an affirmative defense based on the "Concealment or Fraud" provision of the insurance policy. To support this affirmative defense, Safepoint deposed Christina Crossway, the

3

corporate representative of Citizens Property Insurance Company. Crossway testified that Vargas made a prior claim on the property in 2013 for "a broken water pipe under the kitchen sink" resulting in "water damage to the kitchen cabinets." The damaged areas listed under this prior claim included many of the same areas in the claim Vargas had submitted to Safepoint.

Safepoint moved for summary judgment based on the "Concealment or Fraud" affirmative defense.[1] The motion asserted that Vargas had violated the concealment or fraud provision in the contract by failing to disclose the previous water leak in her deposition and interrogatory answers and by including damages from the previous claim in her sworn proof of loss. While there were other grounds asserted in the motion, the summary judgment hearing centered entirely on Safepoint's "Concealment or Fraud" defense. Vargas argued that while Safepoint had submitted evidence of a prior claim, it had submitted no evidence to counter Vargas's statement under oath that she did not recall the prior claim when giving her interrogatory answers and

---

[1] Safepoint also moved to dismiss Vargas's lawsuit asserting that Vargas's interrogatory and deposition responses constituted a fraud upon the court. The trial court conducted an evidentiary hearing on this motion at which Vargas testified, under oath, that she had simply forgotten the prior claim. The trial court denied Safepoint's motion to dismiss.

deposition testimony. The trial court granted Safepoint's motion for summary judgment. This appeal followed.

**Discussion**

This Court reviews a trial court's ruling on a motion for summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id.

"Insurance contracts are construed according to their plain meaning and, if a policy provision is clear and unambiguous, it should be enforced according to its terms." Universal Prop. & Cas. Ins. Co. v. Johnson, 114 So. 3d 1031, 1035 (Fla. 1st DCA 2013) (citing Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So. 2d 528 (Fla. 2005)).

Subsection (c) of the "Concealment or Fraud" provision states that Safepoint will not provide coverage for loss where an insured "[m]ade material false statements relating to this insurance." Because the policy does not define "false statements," we look to the ordinary, dictionary meaning of the term. This brings us to the first problem in this dispute: the term "false" has two distinct meanings. It has been defined as either "[c]ontrary to fact or truth" or as "deliberately untrue." American Heritage Dictionary (2d ed. 1985);

5

see also Merriam-Webster's Ninth New Collegiate Dictionary 447 (9th ed. 1987) (defining "false" as "intentionally untrue," "tending to mislead," "adjusted or made so as to deceive," or "not true").

This problem is not as serious as it first appears. While "false" includes both meanings, the more common usage of the word, certainly in the legal context, carries the connotation of an intentionally deceptive statement. "Only when the context strongly suggests mere error is the connotation of being deceived absent . . . *false* has an overlay of perfidy that is absent from *wrong*: *false advice* is both incorrect and two-faced, while *wrong advice* is simply incorrect." Bryan A. Garner, Garner's Dictionary of Legal Usage 352 (3d ed. 2011).

In Anchor Property & Casualty Insurance Company v. Trif, 322 So. 3d 663 (Fla. 4th DCA 2021), the Fourth District recently interpreted the use of "false statements" in a similar concealment or fraud provision of an insurance policy. Judge Robert M. Gross, writing for the majority, found that "in jurisprudence, 'the word "false" implies something more than mere untruth: it imports knowledge and a specific intent to deceive.'" Id. at 675 (quoting State v. Tedesco, 397 A.2d 1352, 1358 (Conn. 1978)). We agree with the Fourth District and apply this "more common" definition of the term "false statement" to include an element of intent. Id.

This interpretation not only comports with the plain, dictionary meaning, it is also compelled by the rule of construction that "[p]olicy provisions that tend to limit or avoid liability are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy . . . .'" Am. Integrity Ins. Co. v. Estrada, 276 So. 3d 905, 914 (Fla. 3d DCA 2019) (quoting Bethel v. Sec. Nat'l Ins. Co., 949 So. 2d 219, 223 (Fla. 3d DCA 2006)).

This result is bolstered by the fact that "words are given meaning by their context." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012). Here, the term "false statement" arises in the context of forfeiture of coverage. As the Supreme Court stated decades ago, "a forfeiture of rights under an insurance policy is not favored by the law, especially where, as here, a forfeiture is sought after the happening of the event giving rise to the insurer's liability." Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951). In the forfeiture context, as Judge Gross pointed out in Trif, the Supreme Court has long interpreted similar language (such as "false swearing") in a concealment or fraud provision to require not simply incorrectness or untruth but also "the element of fraud." 322 So. 3d at 674 (citing U.S. Fire Ins. Co. v. Dickerson, 90 So.

7

613, 618 (Fla. 1921)). Other cases have taken a similar approach. See id. at 671–73 (collecting cases).

Of course, our interpretation is not without its own difficulties. First, as Judge Edward L. Artau points out in his principled and carefully reasoned dissent in Trif, "because subsection (1) [of the policy] already covers intentional misrepresentations, the majority's interpretation of the policy language would render subsection (3) to be superfluous or meaningless because it would do nothing more than repeat subsection (1) if we were to read an intent requirement into it." Id. at 678. Judge Artau's observation cannot be denied. His interpretation of "false statements" as requiring no intent, however, presents the same problem.

As Judge Gross noted, no matter how one interprets the policy, "some portion of the 'Concealment or Fraud' provision will be rendered superfluous." Id. at 675. If subsection (3) is read to dispense with an intent requirement as the Trif dissent suggests, then subsections (1) and (2)'s inclusion of an intent requirement are rendered superfluous: mere proof of incorrectness under subsection (3) would forfeit coverage thus eliminating any need for proof of intentional misrepresentation or fraud so prominently featured in subsections (1) and (2).

In these circumstances, where either of the competing interpretations will render some language a nullity, the rule of construction requiring avoidance of interpretations that make any language superfluous loses traction. The fault is not in the rule of construction but in the policy language. We therefore decline to apply the rule in a manner that defeats the common meaning of "false statement" and the other principles of construction discussed above. Thus, while recognizing the accuracy of Judge Artau's insight, we continue to interpret the reference to "false statements" in the "Concealment or Fraud" provision under review as requiring an element of fraudulent intent.

The second difficulty with our interpretation concerns "false statements" in the application process. While this issue is technically not before us as this case concerns post-loss "false statements," we make one observation. Even if the reference to "false statements" in the policy language at issue includes an element of intent, general principles of contract formation and recission may provide a basis to set aside an insurance contract for a merely incorrect statement made in an insurance application. Illustrative of this point is Universal Property & Casualty Insurance Co. v. Johnson, 114 So. 3d 1031 (Fla. 1st DCA 2013).

Johnson involved statements on an insurance application regarding the applicant's status as a convicted felon. The First District concluded that "a misrepresentation [made on an insurance application] 'need not be fraudulently or knowingly made but need only affect the insurer's risk or be a fact which, if known, would have caused the insurer not to issue the policy or not to issue it in so large an amount.'" Id. at 1036 (quoting Fabric v. Provident Life & Acc. Ins. Co., 115 F.3d 908 (11th Cir. 1997)). This determination is consistent with well-established Florida law that "a misstatement in, or omission from, an application for insurance need not be intentional before recovery may be denied . . . ." Kieser v. Old Line Life Ins. Co. of Am., 712 So. 2d 1261, 1263 (Fla. 1st DCA 1998).

As stated by the First District, "[t]his case law relating to insurance policies is consistent with the general principle in contract law that, to obtain rescission of a contract, based upon misrepresentation, it is not necessary that 'the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient . . . .'" Johnson, 114 So. 3d at 1035 (quoting 27 Williston on Contracts § 69:49 (4th ed.)). We do not abandon this long-standing precedent regarding contract recission based upon incorrect information provided in an insurance application. It simply does not apply here where the incorrect statement was made post-loss.

10

Finally, Safepoint argues that, even if the policy required the insured's statement to be intentionally misleading, we should nevertheless affirm because Vargas's current and previous claims are so similar that no one could credit her assertion that she forgot about the prior claim. Because the trial court did not reach this issue, we similarly decline to consider it.[2]

Reversed and remanded.

---

[2] We affirm without extended discussion the denial of Safepoint's motion to dismiss for fraud on the court. See Leo's Gulf Liquors v. Lakhani, 802 So. 2d 337, 338 (Fla. 3d DCA 2001) (reviewing the trial court's ruling on a motion to dismiss for fraud on the court for abuse of discretion).