STATE OF CONNECTICUT *v.* ALEXANDER S. GONSKI

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued June 9—decided July 26, 1967

*Arnold M. Schwolsky,* assistant public defender, for the appellant (defendant).

*George D. Stoughton,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

THIM, J. The defendant was convicted by a jury of the crimes of breaking and entering with criminal intent a motor vehicle in the possession of another, used as a place for the custody of property;

General Statutes § 53-76; and of possession of burglars' tools in the night.[1] General Statutes § 53-71.

The only errors assigned and briefed relate to the admission into evidence of a tire iron, a flashlight and a pair of gloves.

To understand the claims, the following facts are pertinent: On Sunday, May 24, 1964, at 1:15 a.m. Nicholas Vaccarelli closed his restaurant in Bristol and drove in his automobile to New Britain. He had the week's receipts with him in a moneybag. He did his banking on Monday mornings, and occasionally he would put his week's receipts in the trunk of his car. At approximately 2:10 a.m. Vaccarelli arrived at Maple Street near Pearl Street in New Britain where he parked his car. He left his jacket hanging inside the car. His car was in excellent condition when he parked it.

Olivier Dufault lives on Maple Street in New Britain, across the street from where Vaccarelli's car was parked. Around 3 a.m. on May 24, 1964, he was awakened by a noise. Looking out his window, he saw three men trying to break into the trunk of Vaccarelli's car. The tallest of the three was wearing a dark suit. As he watched, the sound of a motorcycle was heard, and the three men ran away from the car. After a short time two of the men returned to the car. Dufault awakened his son John, who lived with his father. Both men then looked out the window. The two men who had returned to the car were again attempting to break into its trunk. John left the window, called the police, and returned to the window. As the Dufaults watched, the tall man wearing the dark suit returned

[1] The defendant pleaded guilty to being a habitual criminal. General Statutes § 54-121.

to join the other two. After the three men managed to open the trunk of the car, they left the scene. As the three were leaving, the tallest of the three threw what appeared to be a steel pipe into a parking lot near Vaccarelli's car. The three headed toward Pearl Street and rounded the corner. Olivier Dufault and his son lost sight of the three men just as a police car arrived. With the exception of the three men, Dufault and his son had seen no one else on the street.

Three police officers, in two vehicles, approached the intersection of Maple and Pearl Streets in response to a radio call. As they neared the intersection, they observed three men walking east on Pearl Street away from its intersection with Maple. As the officers approached them, the three men turned around and walked back on Pearl to Maple, where they turned and headed south. As the officers watched, the three men, who were walking in a single file, extended their arms over a four-foot fence which runs parallel with the sidewalk. One of the men was observed to drop something shiny. The officers halted the men. The defendant was the first in line. He was the tallest of the three and was wearing a dark suit. On the far side of the fence, in the immediate vicinity of where the last man in line had extended his arm over the fence, the officers found a tire iron and a pair of gloves. The officers also found the shiny object which the second man in line had dropped, a flashlight. Later, in the course of their investigation, one of the officers accompanied John Dufault into the parking lot next to Vaccarelli's car where, as noted, the tall man in the dark suit was observed to have thrown something which looked like a steel bar. The officer found a three-foot section of galvanized pipe. Still later,

an inspection of Vaccarelli's car revealed that its trunk lid and right front door were damaged, that the right front vent window was smashed, that the glove compartment had been opened, and that the seats had been pulled out.

The defendant submits that the trial court erred in admitting into evidence the tire iron, the flashlight, and the pair of gloves. He asserts that the state failed to establish that these articles were in his possession.

The state was not required to prove that the defendant himself had actual physical possession of any or all of the articles. If it was established that any of the three had dominion and control over the articles and if all three were acting, at the time, pursuant to a common purpose, then all would have possession of the articles. *State* v. *Ferrone,* 97 Conn. 258, 262, 116 A. 336.

The state offered direct evidence that the defendant and his two companions had forced open the trunk of Vaccarelli's car, that they were under constant observation until they were apprehended, that all three men extended their arms over the fence, that one of the men dropped a shiny flashlight, and that the tire iron and the gloves were found in the immediate area where another of the men had extended his arm. The state also offered evidence that these articles did not belong to the property owner on whose lot they were found. In criminal cases, as in civil cases, it is within the province of the trier to draw reasonable and logical inferences from the facts proven. See *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591; see also *State* v. *Hassett,* 155 Conn. 225, 236, 230 A.2d 553; *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193. There was sufficient direct evidence of facts from which

the trier could reasonably and logically infer that one or more of the three men dropped the articles in question.  The state was not required to prove that it would have been impossible for these articles to have gotten in the yard in any other way.  See *State* v. *Foord,* supra, 295; see also *State* v. *Reid,* 154 Conn. 37, 40, 221 A.2d 258.  The defendant contends that an inference cannot be drawn from facts which themselves are found as a result of inferences. That is not the law of our state.  A trier may base one inference on facts it finds as a result of other inferences.  See *State* v. *Hayes,* 127 Conn. 543, 555, 18 A.2d 895; see also *Blados* v. *Blados,* 151 Conn. 391, 395, 198 A.2d 213; *Lemmon* v. *Paterson Construction Co.,* 137 Conn. 158, 163, 75 A.2d 385; *Kakluskas* v. *Somers Motor Lines, Inc.,* 134 Conn. 35, 40, 54 A.2d 592; 1 Wigmore, Evidence (3d Ed.) § 41. The court's finding, necessarily implicit in its ruling, that sufficient foundation had been laid to warrant an inference of control of the three articles by the defendant was not erroneous.  A subordinate claim of the defendant that the articles offered in evidence were not shown to be the articles found by the officers does not require additional discussion. Thus, there was no error in the ruling in admitting them into evidence.

There is no error.

In this opinion the other judges concurred.