## STATE OF CONNECTICUT *v.* LEE GABRIEL
### (11360)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued November 3, 1983—decision released March 13, 1984

*Andrew B. Bowman,* for the appellant (defendant).

*Edward J. Caldwell,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant went to trial on a three-count information with each count charging him with the crime of larceny by receiving stolen property. After a trial to the jury, he was found not guilty on the first two counts[1] and guilty on the third count. That count charged him with larceny in the first degree by receiving stolen property in that at the town of Fairfield on March 16, 1981, he "did retain the legal property of one Julian Bell, valued in excess of Two Thousand Dollars . . . knowing that said property

---

[1] The first count alleged that the crime was committed on March 3, 1981, and involved the property of one Richard Nabb of Fairfield valued in excess of $2000. The second count alleged that the crime was committed on March 9, 1981, and involved the property of one Jean Higgins of Fairfield valued in excess of $500.

was probably stolen, in violation of Section 53a-119 (8) and Section 53a-122 (a) (2) . . . ."[2] This appeal on the third count followed.

The defendant claims on appeal: (1) that the statute under which he was convicted is "totally defective" because it purports to allow a conviction without proof of criminal intent; (2) that that statute is unconstitutional in that it permits the state to obtain a conviction without proving the essential element of criminal intent beyond a reasonable doubt;[3] (3) that the court erred in the charge; and (4) that there was insufficient evidence to support the verdict. We find no error.

Certain evidence that was before the jury in this case is properly referred to at this point.[4] For about one year prior to March, 1981, the defendant and his father owned and operated "Lee's News" (the newsstand) in Fairfield. In addition to selling such items as news-

[2] General Statutes § 53a-119 (8) provides in part: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner."
General Statutes § 53a-122 (a) (2) provides: "A person is guilty of larceny in the first degree when . . . the value of the property or service exceeds two thousand dollars."

[3] It is not at all clear from the record before us to what extent the first and second claims the defendant makes on appeal were raised and decided in the trial court. The defendant, nevertheless, claims review arguing that they come within the second "exceptional circumstance" of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." We will consider them under *Evans.*

[4] The transcript of this six-day trial discloses numerous conflicts in the evidence. Where the sufficiency of the evidence to support a finding of guilt beyond a reasonable doubt is challenged, the United States Supreme Court has said: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979).

papers, cigarettes, milk, food products and the like, the defendant's father, pursuant to a scrap metal license issued by the Fairfield police, was permitted to buy items of gold, silver, jewelry and things of that nature. For the purpose of weighing precious metals, a set of scales was maintained at the newsstand. The defendant knew how to operate these scales and how to interpolate the weight of items on these scales into dollars for the purpose of estimating the value of such items. The price of gold fluctuates, and daily calls to a wholesale house would inform the defendant or his father of the current price of gold. If a stone, such as a diamond or black onyx, was attached to the gold or silver to be weighed, that stone would have to be extracted or removed from its metal surroundings prior to weighing the metal.

On March 16, 1981, at about 6:30 p.m., Paul Pyrch, Paul Melcher and John Yakubik all met at the newsstand, remained there about half an hour and then left and burglarized the home of Julian and Susan Bell in Fairfield. These three young men knew the defendant. All three returned to the newsstand sometime between 7:30 and 8 p.m. Before reentering the newsstand, they examined the property which they had taken from the Bell residence in the newsstand parking lot, "separated what was worth something and what wasn't" and then went into the newsstand to weigh the more valuable items. When they entered, the defendant was busy working and they took the scales and went into the back room. According to Pyrch, before they left to commit the Bell burglary, the defendant had been told that they were going out to burglarize a house. When they returned, upon the defendant's inquiry, they told him the general area of the Bell residence and also showed him what they had taken. Yakubik testified that the

defendant "probably knew they [the Bell items] were stolen or hot" when they removed the items from their pockets once inside.

The defendant admitted that he came into the back room where the other three young men were, that he "looked through it . . . to make sure it was all gold" and that he was a "little bit suspicious." After looking it over and touching it, the defendant said: "Looks nice. You guys did well." He also said that it was the "amount" of the jewelry which they asked him to weigh, and which he admitted weighing, that made him suspicious. The defendant did the weighing, putting the final measure on it, and then, using a calculator, gave an estimate of value. The estimates of the time they were in the back room of the newsstand doing this ran as high as fifteen to twenty minutes. The defendant himself said that it took him five minutes to make the calculations.

The defendant first claims that the statute, i.e., § 53a-119 (8) is "totally defective" because it purports to allow conviction without proof of criminal intent. We cannot accept this claim. His argument here focuses on that language of that statute which provides: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner. . . ." He maintains that criminal intent must be proved beyond a reasonable doubt to establish guilt and that doing away with criminal intent in a felony statute should neither be lightly inferred nor allowed. He further claims that the legislature, in enacting the statute, has so lowered the standard of proof that it has effectively eliminated any requirement of mens rea as well as no longer requiring that guilty knowledge be proven beyond a reasonable doubt. Thus,

he argues that this "traditional larceny offense" statute is constitutionally vulnerable under *Morissette* v. *United States,* 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). *Morissette* does not aid the defendant.

In *Morissette,* the defendant openly took certain government property which consisted of bomb casings lying in an open area on a former Air Force practice bombing range which he had assumed were abandoned. He candidly admitted taking them and was tried and convicted for "knowingly" converting government property. The trial court rejected his claim that he thought the property was abandoned and took from the jury the question of mens rea instructing: " 'The question on intent is whether or not he intended to take the property.' " *Morissette* v. *United States, supra,* 249. The Supreme Court reversed the conviction and held that the crime required proof of criminal intent.[5] *Morissette* v. *United States, supra,* 263. In the opinion, Justice Jackson reviewed the history of common law larceny-type crimes[6] and contrasted them with "statutory" offenses that did not require a guilty mind. In passing on the specific statute before the court, he said: "[W]here Congress borrows terms of art in which are

[5] In doing so, the Supreme Court said: "We hold that mere omission from § 641 [18 U.S.C. § 641] of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Morissette* v. *United States,* 342 U.S. 246, 263, 72 S. Ct. 240, 96 L. Ed. 288 (1952).

[6] In his discussion in *Morissette* of the prominence of the concept of intent, Justice Jackson said: "Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.' " *Morissette* v. *United States,* 342 U.S. 246, 251, 72 S. Ct. 240, 96 L. Ed. 288 (1952).

Some years later, in 1977, Chief Justice Warren Burger, speaking for the court, said: "Although Blackstone's requisite 'vicious will' has been replaced by more sophisticated and less colorful characterizations of the mental state required to support criminality . . . intent generally remains an indispensable element of a criminal offense." *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 437, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978).

accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." *Morissette* v. *United States,* supra, 263. The Supreme Court concluded that there was no indication that Congress had eliminated intent from the crime with which Morissette had been charged. *Morissette* v. *United States,* supra, 273. Significantly, therefore, the Supreme Court in *Morissette* was not required to decide, and did not decide, the issue of whether congressional elimination of the requirement of intent in traditional crimes would pass constitutional muster. Moreover, a fair reading of the case evinces no holding that, in making an act punishable regardless of intent, Congress would explicitly have to declare that no intent would be required as an element of the proscribed act. Indeed, from the point of view of its holding, *Morissette* is a case of federal statutory construction and it does not persuade us that General Statutes § 53a-119 (8) is "totally defective" as claimed.

Our examination of *Morissette* does not, however, fully dispose of the defendant's claim. The defendant also claims the statute is defective as it purports to do away with guilty knowledge. We do not agree. We recognize the proposition that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." (Emphasis in original.) *Dennis* v. *United States,* 341 U.S. 494, 500, 71 S. Ct. 857, 95 L. Ed. 1137 (1951); see *United States* v. *Freed,* 401 U.S. 601, 613, 91 S. Ct. 1112, 28 L. Ed. 2d 356, reh. denied, 403 U.S. 912, 91 S. Ct. 2201, 29 L. Ed. 2d 690 (1971). We have recently

pointed out that none of the elements of the crime proscribed by General Statutes § 53a-119 (8) includes a specific intent. *State* v. *Perez,* 181 Conn. 299, 435 A.2d 334 (1980). " '[T]he legislature may, if it so chooses, ignore the common-law concept that criminal acts requiring the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions.' *State* v. *Husser,* 161 Conn. 513, 515, 290 A.2d 336 (1971). 'Whether or not a statutory crime requires "mens rea" or "scienter" as an element of the offense is largely a question of legislative intent to be "determined from the general scope of the act and from the nature of the evils to be avoided." ' Ibid.; *State* v. *Gaetano,* 96 Conn. 306, 316, 114 A. 82 (1921)." *State* v. *Kreminski,* 178 Conn. 145, 149, 422 A.2d 294 (1979). "If the legislature may define crimes which depend on no mental element, then it certainly may require an element of knowledge but no specific intent." *State* v. *Perez,* supra, 316.

Our rule has been that an error of judgment in failing to realize the stolen character of the goods involved is not the equivalent of guilty knowledge. *State* v. *Newman,* 127 Conn. 398, 401, 17 A.2d 774 (1940). "Actual knowledge that the property has been stolen is necessary, but the trier 'would not be justified in finding knowledge unless the facts referred to were such that a reasonable man—the accused as a reasonable man—should have inferred and gathered from them knowledge that the goods were stolen.' *State* v. *Weiner,* 84 Conn. 411, 418 [80 A. 198 (1911)]." *State* v. *Appletree,* 35 Conn. Sup. 531, 534, 394 A.2d 744 (1977); see also *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961). We do not regard the enactment of General Statutes § 53a-119 (8) as having modified these principles. *State* v. *Appletree,* supra.

Some courts have held that guilty belief is equivalent to guilty knowledge on the part of a receiver. See *State*

v. *Appletree,* supra, citing *State* v. *Gordon,* 105 Minn. 217, 220, 117 N.W. 483 (1908); *Heyroth* v. *State,* 275 Wis. 104, 109, 81 N.W.2d 56 (1957). *Appletree* went on to state: "This view has been accepted by § 53a-119 (8) by the use of the alternative phrase, 'knowing that it has probably been stolen or believing that it has probably been stolen.' A rational person will believe what he regards as probable and disbelieve what he regards as improbable. . . . [T]he requirement of a mens rea is adequately fulfilled by the adoption of such a standard as the touchstone of guilty knowledge." *State* v. *Appletree,* supra. We agree with the *Appletree* court and hold that the statute adequately encompasses mens rea.

We turn to the related claim that General Statutes § 53a-119 (8) is unconstitutional because it permits the state to obtain a conviction without proving the essential element of criminal intent beyond a reasonable doubt. This, the defendant argues, violates his due process rights under the fourteenth amendment to the United States constitution. Additionally, he maintains that the state's "apparent burden" on the issue of "guilty knowledge or criminal intent" is unconstitutionally lowered to proving the knowledge or belief that the property was "probably stolen." The defendant also argues that under the court's instructions the jury could not make a determination that "the essential element of knowledge or specific intent" had to be proven beyond a reasonable doubt. In rejecting these claims, we have in mind what we have said in this opinion about the "intent" required by the statute.

The due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); see *Mullaney* v. *Wilbur,* 421 U.S.

684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *State* v. *Anonymous,* 179 Conn. 516, 519, 427 A.2d 403 (1980); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978); 1 Wharton, Criminal Evidence (13th Ed.) § 10. It cannot be considered harmless error for a jury "to find an accused guilty without even knowing what are the essential elements of the crimes charged." *State* v. *Griffin,* supra, 162–63; see *United States* v. *Howard,* 506 F.2d 1131, 1134 (2d Cir. 1974); *State* v. *Kurvin,* 186 Conn. 555, 573, 442 A.2d 1327 (1982) (*Speziale, C. J.,* dissenting). Put another way, the failure to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right "to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." *United States* v. *Natale,* 526 F.2d 1160, 1167 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976), citing *United States* v. *Fields,* 466 F.2d 119, 121 (2d Cir. 1972). Of course, any such error is not cured just because an appellate court is satisfied after the fact of conviction that sufficient evidence was before the jury so that it would or could have found that the state proved the missing element had the jury been properly instructed. After all, "when [the defendant] exercised his constitutional right to a jury, he put the [state] to the burden of proving the elements of the crimes charged to a jury's satisfaction, not to ours or [the trial judge's]." *United States* v. *Howard,* supra, 1134.

The defendant's claim that the state's burden on the issue of "guilty knowledge or criminal intent" has been unconstitutionally lowered because of the use of the word "probably" is without merit.[7] As the *Appletree* court pointed out: "Such a claim would have some substance if the adverb 'probably' modified the participles

---

[7] In a terse statement unsupported by any authority in his brief, the defendant asserts that the statute is constitutionally defective because it

'knowing' or 'believing' rather than the verb 'has been stolen' in the phrase, 'knowing that it has probably been stolen or believing that it has probably been stolen.' Under the statute as worded it is perfectly clear that the mental element required is knowledge or belief that the property probably has been stolen, and that the trier must, nevertheless, find beyond a reasonable doubt that this element has been proved." *State* v. *Appletree,* supra, 535. Therefore, the necessary mental state of the defendant required to be proven by the state does not violate *Winship* and its progeny.

We turn next to the defendant's attack on the court's instructions to the jury. While conceding that the court instructed that there must have been an "actual belief, in the defendant's mind, that the property was probably stolen," he first claims that the court "needlessly confused the jury and needlessly lowered" the state's burden of proof in instructing that "if he knew or believed more probably than not it had been stolen, that would be sufficient." He maintains that the instructions

makes the element of "criminal intent" impermissibly vague thus rendering the court's instructions similarly defective. The claim deserves little discussion.

The argument that the word "probably" establishes a standard which is impermissibly vague in a criminal statute was answered in *State* v. *Appletree,* 35 Conn. Sup. 531, 394 A.2d 744 (1977), where the court construed that term as used in General Statutes § 53a-119 (8) as meaning "more likely than not." In that case, the court concluded that there was "no imprecision in a word which can be translated into the arithmetical concept of greater than 50 percent." *State* v. *Appletree,* supra, 533.

"The test for vagueness is whether the statute gives 'adequate warning of what activities it proscribes.' *Broadrick* v. *Oklahoma,* 413 U.S. 601, 607, 93 S. Ct. 2908, 37 L. Ed. 2d 830 [1973]. '[L]aws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.' *Grayned* v. *City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 [1972]." *State* v. *Tedesco,* 175 Conn. 279, 288, 397 A.2d 1352 (1978). The meaning of the statute, insofar as the mental state required of a defendant, is clear. It does not require persons of common intelligence to guess at its meaning and differ as to its application. *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). The claim of vagueness must be rejected.

were such that the jury could not make a determination that the essential element "of knowledge or specific intent" had to be proven beyond a reasonable doubt and that this so attenuated the state's burden that he was left to prove himself innocent of that element. We do not agree.

"If justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime." *United States* v. *Clark,* 475 F.2d 240, 248 (2d Cir. 1973); see *State* v. *Kurvin, supra,* 561; *State* v. *Griffin, supra,* 163. With the defendant's not guilty plea the burden rested on the state to demonstrate his guilt by proving each essential element of the crime charged beyond a reasonable doubt. *Mullaney* v. *Wilbur, supra; In re Winship, supra; State* v. *Griffin, supra,* 162. We examine the charge as a whole to decide whether it "gave the jury a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d 776 (1974).

Our review of the court's instructions demonstrates that the state was properly held to prove all of the essential elements of the crime charged beyond a reasonable doubt. No burden was cast on the defendant to prove himself innocent of the element of the mental state required for the crime involved. The record does not support the argument that the jury was "confused." The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions as to the law. *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980); *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972); *State* v. *Smith,* 156 Conn. 378, 383, 242 A.2d 763 (1968);

*Smith* v. *United States,* 315 A.2d 163, 167 (D.C.), cert. denied sub nom. *Jeffries* v. *United States,* 419 U.S. 896, 95 S. Ct. 174, 42 L. Ed. 2d 139 (1974).

The defendant claims next that the court erred when it refused to charge the jury in accordance with his request to charge[8] and that it erred when it "confused" the jury by inadequately instructing it on the evidence required to prove retention of stolen property. He asserts that the court erred in that it failed to focus on the crucial issue of control by the defendant over the alleged stolen property by refusing to give the request in haec verba or by failing to charge the substance of the request.[9] This, he asserts, was damaging in light of his position that "he did not possess or control the items that were taken into his store on the evening of the Bell burglary." These claims are unsound.

---

[8] The defendant's request to charge was the following:

"The statute in this case reads as follows: 'Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen, or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner.'

"The word retain in this statute means to hold or keep in possession.

"The word receive in this statute means to acquire or take into possession.

"Therefore if you find that Pyrch, Melcher, and Yakubik went into Lee's News Room with stolen merchandise you must then determine whether or not the defendant received or retained that stolen merchandise. You may not find the defendant guilty of receiving stolen property under this statute unless you first find that there was a transfer of control over the stolen merchandise from Pyrch, Melcher and Yakubik to the defendant Lee Gabriel and that the defendant Lee Gabriel took the stolen merchandise into his possession."

[9] That portion of the court's charge which is attacked in the defendant's brief states: "Now, the statute uses the words 'receives, retains, or disposes.' The State must also prove that the defendant received, retained or disposed of the stolen property.

"The connecting word or is used. So the evidence upon this element of the crime would be sufficient if it proved the defendant received or retained or disposed of the property. Any one of those three.

"Now, the word received means to acquire possession or control. Manual possession is not essential. Manual possession is not necessary. It is

Initially, we note that prior to the challenged instruction the court, inter alia, charged fully on larceny and the various degrees of that crime as well as the necessity that the state prove the stolen character of the property. Immediately after the challenged portion, it also instructed on the required guilty knowledge which the defendant must possess. We do note that the request does not cover all the elements which the state must prove to obtain a conviction. It requests the court to instruct that the defendant cannot be found guilty of "receiving stolen property" under this statute "unless" the jury "first finds there was a transfer of control" from the three burglars to the defendant and that he took the property "into his possession." The request, however, does not contain anything about the required guilty knowledge of the defendant.

" 'It is the law of this state that a request to charge which is relevant to the issues of the case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance.' *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); see also *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977); *State* v. *Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977); *State* v. *Avila,* 166 Conn. 569, 574, 353 A.2d

sufficient if the defendant has control over the property whether he keeps it in his house or his car or in a lot somewhere.

"It is also sufficient if the defendant has used the property to make a loan on it and has pledged it as security. As in the case of a pawnbroker who lends money in situations such as this.

"The word retain means to keep or hold property. Where a person initially receives stolen property—incidentally, he would be guilty if he learned later that the property had been stolen and continued to retain it.

"The expression disposes of means to transfer or relinquish possession or control of the property or to affect a virtually permanent or final change in its nature of character. So as to make restoration or reconstruction of the merchandise."

776 (1974)." *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980). It is true that the court did not instruct the jury in the specific language of his request, but it did give the request in substance. The court instructed fully on the stolen property statute. Its definition of "receive" and "retain" were practically the same as those in the request. It fleshed out the request with substantive instructions on the meanings of those words. The jury was instructed that "received" means "to *acquire* possession or *control*" and, shortly thereafter, that "retains" means "to *keep* or *hold* property." (Emphasis added.) This clearly conveyed to a jury of laymen the concept of transfer of control, which the defendant sought in his request, because one must "acquire" something before one "retains" it. " ' "The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 [1974]; *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277 [1973]. It is well established that individual instructions are not to be judged in artificial isolation from the overall charge. . . .' A charge must be considered as to its probable effect on the jury in guiding them to a correct verdict in the case. *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933)." (Citations omitted.) *State* v. *Hines,* 187 Conn. 199, 206, 445 A.2d 314 (1982). Mindful that the primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find established; see *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979); we must reject the defendant's argument that the court erred concerning his request to charge.

The defendant's next claim of error is that the court "confused" the jury by its inadequate instructions on the evidence required to prove retention. This claim

also lacks merit. In explaining the terms "receive" and "possession and control" the court instructed that manual possession is not essential. It pointed out, by way of example, that a defendant can have control over property "whether he keeps it in his house or in his car or in a lot somewhere" or if he has used the property "to make a loan on it and has pledged it as security" as in the case of a pawnbroker.

Although we recognize that "[i]n dealing with statutory language, the court has a duty to avoid confusing the issues by 'over definition' "; *State* v. *Girouard,* 135 Vt. 123, 140, 373 A.2d 836 (1977); we note that no exception was taken to the charge on the grounds now asserted.[10] Moreover, the state did not offer evidence or any claim that the property came into the defendant's possession for the purpose of a loan or security or that the defendant was a pawnbroker. This illustrative observation in the charge by the court could not, therefore, have possibly misled the jury. See *State* v. *Ruiz,* 171 Conn. 264, 273, 368 A.2d 222 (1976). The same is true for the observation concerning a defendant having control "whether he keeps it in his house or in his car or in a lot somewhere." In this latter instance, however, the defendant's claim falters because there was testimony before the jury that certain of the property from the Bell burglary was left at the defendant's store overnight. Moreover, if the jury was "confused," as claimed, by that portion of the charge attacked here, it had an opportunity to indicate so when it sent out the following question: "What is the definition of larceny as applied to this case? Please reread." "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach*

[10] We point out that the court's instruction that manual possession was not necessary or essential was not excepted to by the defendant. At the close of the charge, defense counsel said: "My exception would be on your failure to charge as per my request submitted this morning—the last part of it."

v. *United States,* 326 U.S. 607, 612–13, 66 S. Ct. 402, 90 L. Ed. 350 (1946). The record shows that the court responded appropriately without repeating that portion of the charge which the defendant now attacks. Since there were no further requests for clarification, we cannot say that the jury was confused as claimed. Thus, there is no reasonable possibility that in rendering its verdict the jury was misled by any of the examples claimed by the defendant. *State* v. *Ruiz,* supra.

Finally, the defendant claims that there was insufficient evidence to support the verdict of guilty of larceny in the first degree. He argues that, even assuming that it could be found that he did receive and exercise control over stolen property, the state still failed to sustain its burden of proving that such property had a value in excess of $2000. We disagree.

In determining whether the evidence is sufficient to sustain a verdict, we have said that " 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . [T]he evidence presented at trial must be given a construction most favorable to sustaining the jury's verdict.' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981); see *Jackson* v. *Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979); *State* v. *Kish,* 186 Conn. 757, 767, 443 A.2d 1274 (1982). "Each essential element of the crime charged must be established by proof beyond a reasonable doubt"; *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); and " 'although it is within the province of the jury to draw reasonable logical inferences from the facts proven, they may not resort to speculation and conjecture.' "

*State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980). It is for the jury to weigh the evidence, without regard to the side from which it comes, in determining whether the defendant has been proven guilty beyond a reasonable doubt. 30 Am. Jur. 2d, Evidence § 1124.

Certain of the evidence we have already set out justifies a finding by the jury that the defendant knew or believed that the property brought into his newsstand by the three young men had probably been stolen. General Statutes § 53a-119 (8). There remains the defendant's claim that the evidence was not sufficient to demonstrate that the defendant "did retain" an amount of the Bell jewelry in excess of $2000 in value and that he exercised control or dominion over such property. The state, claiming the evidence was sufficient, argues that he did act with reference to the Bell jewelry in the back room of his newsstand, either physically or constructively, in a manner that caused that jewelry to be withheld permanently from the Bells. See General Statutes §§ 53a-122 (a) (2), 53a-119 (8). We agree with the state.

In its instructions, the court told the jury that the term "retains" meant "to keep or hold property." The word "retain" has been defined to mean "to hold or continue to hold in possession or use." Webster, Third New International Dictionary. "Possession" may be actual or constructive. "In criminal law, the word 'possession' generally denotes ' "an intentional control of a designated thing accompanied by knowledge of its character." ' " *State* v. *Kas,* 171 Conn. 127, 130, 368 A.2d 196 (1976) (possession of stolen goods); *State* v. *Schoenbneelt,* 171 Conn. 119, 125, 368 A.2d 117 (1976) (possession of recently stolen property). "Possession" may be joint as where two or more persons have dominion and control over the articles involved and where

such persons are all acting at the time pursuant to a common purpose. See *State* v. *Gonski,* 155 Conn. 463, 467, 232 A.2d 483 (1967).

"The duration of the possession is immaterial; possession for a brief period only is sufficient." 76 C.J.S., Receiving Stolen Goods § 6 (b), n.6, citing *State* v. *Krupin,* 100 N.J.L. 7, 125 A. 97 (1924), aff'd, 101 N.J.L. 228, 127 A. 270 (1925) (mere receipt of stolen goods, knowing them to be stolen, even if only for carting or storing temporarily or if only to hide them or to assist the thieves in disposing of them held sufficient). An early case affirmed a conviction for receiving stolen goods, i.e., money, saying in part that the defendant is guilty if he retains the stolen goods "for a single moment . . . ." *Leonardo* v. *Territory,* 1 N.M. 291, 294 (1859). We conclude that to come within § 53a-119 (8) the state need only demonstrate that the accused has retained another's property with the requisite knowledge of its stolen character for any period of time which, upon the evidence, would justify a rational jury in finding a retention in fact. This is so whether the retention involves actual or constructive possession or exclusive or joint possession.

On the evidence, the jury could reasonably have found that the defendant obtained possession or control over the stolen property weighed and evaluated. We cannot accept the defendant's claim that he was merely present. Mere presence in the vicinity of stolen property, "unilluminated by other facts" is insufficient proof of possession. *United States* v. *Romano,* 382 U.S. 136, 141, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965); *State* v. *Kas,* supra; *State* v. *Dall,* 305 A.2d 270 (Me. 1973). We have already referred to some of the illuminating facts and there are others. The defendant would not weigh the jewelry for its metal value until any valuable stones, such as a diamond, had been "popped out." He had examined it and looked through it "to make sure it was

all gold" before it was placed on the scales. He knew why the burglars were in his back room and he took charge.[11] No metaphysical subtleties need be indulged for the jury reasonably to find that he controlled what was weighed and the weighing process, that he wanted to be sure that just metals were weighed, and that he, utilizing his knowledge of current metal prices, employed his calculator to give an estimate of value. The jury could reasonably have found that the defendant did "retain" property of the Bells.

Moreover, the evidence is sufficient to support the finding that the value of that property was in excess of $2000. The rule that an owner of property may testify as to its value is applicable in criminal as well as civil cases. *State* v. *Baker,* 182 Conn. 52, 60–61, 437 A.2d 843 (1980). Mr. and Mrs. Bell both testified concerning the articles that were stolen from their home on March 16, 1981, as well as testifying as to their value.[12] These included: a pair of lady's diamond earrings valued at $3000; a lady's diamond sapphire and gold ring[13] valued at $1500; a lady's diamond and gold wristwatch valued at between $1200 and $1500; a man's Gruen gold wristwatch valued at $600; three or four pair of men's gold cufflinks valued between $300 and $400; and gold earrings (other than the diamond earrings) valued at about $100. Paul Pyrch testified that on the night of the Bell burglary he and the other two participants in that crime brought into the defendant's store the following: "a couple of gold rings, a couple of gold necklaces, a pair of diamond earrings, a pair

---

[11] One of the participants in the Bell burglary, John Yakubik, testified concerning the defendant: "He balanced out the scale, threw everything on the scale after the stones were removed, threw everything on the scale, weighed it out. He has a calculator, knew how much it was an ounce. He punched whatever he had to punch to get a number and the rough estimate."

[12] There was admitted into evidence a list of the articles taken in the Bell burglary.

[13] Pyrch testified that "[t]he sapphire was set in the gold ring."

of gold earrings, a couple watches, gold watches, a [diamond] sapphire ring. That's about what I can remember so far. It was all gold and silver jewelry that was brought in."[14] The defendant weighed and valued them during the time he retained them.

"In a criminal case, it is within the province of a jury to draw reasonable and logical inferences from proven facts." *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72 (1975). A trier may base an inference on facts it finds as a result of other inferences. *State* v. *Gonski,* supra. There was sufficient basis in the facts established by the cumulative evidence from which the jury could logically infer and on which they could properly rely to predicate their finding that the defendant retained stolen goods with a value in excess of $2000. Cf. *State* v. *Saracino,* 178 Conn. 416, 423 A.2d 102 (1979).

There is no error.

In this opinion the other judges concurred.

---

[14] Immediately after Pyrch recounted this, the following questions were placed and these answers received from him on direct examination by the state:

"Q: Now, the diamond sapphire ring; was that brought in?
"A: Yes, it was.
"Q: And diamond earrings?
"A: Yes.
"Q: So you brought in items other than gold and silver in addition?
"A: Yes. If you say sapphire, yes.
"Q: Now these items were taken where in the store?
"A: In the back room.
"Q: Were they weighed?
"A: Yes.
"Q: By whom?
"A: Lee."