## STATE OF CONNECTICUT *v.* WILLIAM PREYER
### (11790)

PETERS, C. J., HEALEY, SHEA, DANNEHY, and SANTANIELLO, Js.

Argued November 14—decision released December 31, 1985

*Katherine C. Callahan,* with whom were *Joette Katz,* public defender, and *Kent Drager,* assistant public defender, for the appellant (defendant).

*James G. Clark,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Carl Schuman,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this case is the propriety of an instruction to the jury that cohabitation was not a defense to the crime of sexual assault. The defendant, William Preyer, appeals from a judgment sentencing him to a term of eight years imprisonment upon his conviction, after a trial to a jury, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a),[1] of kidnapping in the second degree in violation of General Statutes § 53a-94[2] and of assault in the third degree in violation of General Statutes § 53a-61.[3] We find error only in the conviction for sexual assault in the first degree.

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE . . . . (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[2] "[General Statutes] Sec. 53a-94. KIDNAPPING IN THE SECOND DEGREE: CLASS B FELONY. (a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

[3] "[General Statutes] Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument. . . ."

The jury could reasonably have found the following facts. The defendant had been living with the victim in her Stamford apartment for several months when, on December 28, 1981, they had a heated argument resulting in a call to the police and, upon their intervention, a request for the defendant to leave. Although the defendant then left peaceably, the victim, afraid that he might return, spent the night and the next day at a neighbor's apartment. That afternoon, on December 29, the victim was awaiting the visit of a friend with whom she was planning to attend a class at the YWCA. The friend arrived, unexpectedly accompanied by the defendant and his cousin. The defendant forcibly prevented the victim from telephoning the police as she had been instructed by them the previous day. After repeatedly hitting the victim, the defendant forced her to leave the apartment and to go with him to the street and there to enter a parked Toyota owned by the victim for which the defendant had a set of keys. The defendant drove the car to a secluded area of Dyke Park.

At the park, the defendant dragged the victim out of the car, threw her on the ground, punched her, pushed her into the car and threw a rock at her which hit her in the head. The defendant then pulled the victim back into the car, tore her clothes and ordered her to undress. Once the victim was completely nude, the defendant forced her to spread her legs and squeezed her vagina with a pair of pliers with resulting trauma to the victim's genitalia. The victim was able to escape by running nude out of the park to a nearby apartment house on Elm Cross Road, where the police were called. The victim was then taken to Stamford Hospital, where she was observed to have cuts, scrapes, contusions and injuries to her genitalia.

The defendant was arrested that same evening in Dyke Park. He had himself directed the police to the

Toyota, which was subsequently found to contain a bundle of female clothing, a bracelet, a pair of pliers and a rock containing a blood stain.

At the trial before the jury, the defendant expressly offered two alternate defenses, a lack of the requisite intent on his part, and consent on the part of the victim. On appeal from the judgment against him, the defendant raises three issues concerning his convictions for the crimes of sexual assault, kidnapping and assault. He claims that the trial court erred: (1) in instructing the jury that the affirmative defense of cohabitation had no bearing as a defense to the charge of sexual assault in the first degree; (2) in instructing on sexual assault under a different section of the general statutes from that with which he had been charged in the information; and (3) in restricting the defendant's cross-examination of the victim regarding her prior sexual activities with the defendant. Because we find error on the first claim, we need not consider the second, although we will address the third.

The defendant's first claim of error is that the trial court erred in its instruction about a defense applicable to the crime of sexual assault, under General Statutes § 53a-70, with which he was charged. By virtue of General Statutes § 53a-67 (b),[4] cohabitation is an affirmative defense to this charge of sexual assault. Cohabitation is not a defense to a charge of sexual assault under § 53a-70b,[5] but §§ 53a-70 and 53a-70b

[4] "[General Statutes] Sec. 53a-67. AFFIRMATIVE DEFENSES. . . . (b) In any prosecution for an offense under this part, except an offense under section 53a-70b, it shall be an affirmative defense that the defendant and the alleged victim were, at the time of the alleged offense, living together by mutual consent in a relationship of cohabitation, regardless of the legal status of their relationship."

[5] "[General Statutes] Sec. 53a-70b. SEXUAL ASSAULT IN SPOUSAL OR COHABITING RELATIONSHIP: CLASS B FELONY. (a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse,

describe crimes that are statutorily separate and distinct.

At the trial, the defendant introduced evidence relevant to a defense of cohabitation. The victim testified that she and the defendant had begun dating in August of 1981 and that he had moved into her apartment, by mutual consent, in October of that year. The couple had lived together in that apartment from October to late December. The defendant had kept his clothes there, had been given a set of keys to the victim's Toyota, had driven the victim to and from work on a regular basis, and had shared in the care of the victim's son. The victim and the defendant had frequently socialized with members of the defendant's family and with the victim's girl friend. This evidence, as the state concedes in its brief to this court, would have been sufficient to present the cohabitation question to the jury if the defendant had requested a proper charge.

The defendant failed to request a charge on cohabitation. The trial court, after explaining the statutory requirement of proof of sexual intercourse, charged the defense of cohabitation out of the case. The court told

fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury.

"(c) Any person who violates any provision of this section shall be guilty of a class B felony."

the jury: "[Formerly if] there was a defense that was raised concerning cohabitation . . . this statute would not be applicable. [Formerly if] two persons who . . . though not married to one another were living together by mutual consent, and holding themselves out as man and wife, and they were living together as man and wife, and the relationship of this living together as man and wife included the many facets of married life, in addition to sexual relations . . . [there was an assumption] of marital rights and duties, and obligations which are usually manifested by married people including, but not necessarily dependent on, sexual relations. The legislature has, however, changed this statute. This statute is applicable to married persons or to persons who cohabitate together. Now, there is evidence of a previous relationship between the defendant and the victim in this case, and that evidence and that testimony you will give such weight, and such credibility as you believe appropriate. There was also evidence that the parties broke up on the night before this particular incident, or at least separated, and [the victim] did not return to her apartment. At any rate, *the relationship between the parties beforehand, whether in your mind is equivalent of cohabitation or not, has no bearing as a defense to this particular charge.* It might have a bearing with regard to questions of consent, questions of veracity, how much weight, or truth or belief you will give to it." (Emphasis added.) The defendant took no exception to this instruction when it was given.

It is clear that the trial court's instruction on cohabitation was incorrect. While it might have been logical for the legislature, upon enacting § 53a-70b, to amend § 53a-67 (b) to exclude cohabitation as an affirmative defense whenever there is an accusation of sexual assault in the first degree, the legislature chose not to

do so. Instead, the legislature expressly limited its repeal of the cohabitation defense to those defendants who were accused of having violated § 53a-70b itself.[6] The state concedes that the trial court's charge was incorrect.

The issue before us is the proper resolution of the defendant's claim that, even in the absence of a request to charge or an exception to the charge as given, the trial court's incorrect instruction requires us to set aside the judgment against him. This claim is presented in alternate versions. The more sweeping claim urges us to hold that a trial court always has an independent obligation, as a matter of law, to charge on any theory of defense for which there is a foundation in the evidence. The narrower claim urges us to hold that a trial court, even absent such an independent obligation, having once embarked on an instruction on a theory of defense, has a duty not to misstate the statutes that govern the defense.

There is no basis, in the law of this state, for the defendant's broad claim that a trial court has an independent obligation to instruct the jury on the affirmative defense of cohabitation if the evidence at trial would suffice to support such a charge. In the absence of a timely request or exception, failure to charge on an affirmative defense is reviewable as an exceptional circumstance within the doctrine of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), only when the defendant can demonstrate that he "has clearly been deprived of a fundamental constitutional right and a

---

[6] The legislative hearings accompanying the enactment of Public Acts 1981, No. 81-27, which has been codified as § 53a-70b and which amended §§ 53a-65, 53a-67 and 53a-16a, demonstrate no legislative intent to abrogate the defense of cohabitation for all sexual assaults. See 24 S. Proc., Pt. 3, 1981 Sess., pp. 768–69; 24 H. R. Proc., Pt. 3, 1981 Sess., pp. 963–1010.

fair trial,"[7] or under Practice Book § 3063[8] as plain error. While the constitutional law of due process is implicated by a trial court's failure to instruct the jury on the essential elements of the offense on which the conviction rests; *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 2d 1495 (1945); *State* v. *Gabriel,* 192 Conn. 405, 413–14, 473 A.2d 300 (1984); *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982); we have in the past found no constitutional infirmity in failure to charge on such defenses as entrapment; *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); extreme emotional disturbance; *State* v. *Jacobowitz,* 194 Conn. 408, 411–12, 480 A.2d 557 (1984); or alibi. *State* v. *Parham,* 174 Conn. 500, 509–11, 391 A.2d 148 (1978). Nothing in the circumstances of this case suggests that a different rule should obtain for the defense of cohabitation.[9]

---

[7] The defendant makes no claim that this case falls under the first exceptional circumstance under *Evans* of a newly discovered constitutional right not readily foreseeable at the time of trial. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

[8] "[Practice Book] Sec. 3063. ERRORS CONSIDERED.
"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

[9] Nothing in *Washington* v. *Texas,* 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967), compels a different result. Despite the defendant's contention to the contrary, *Washington* v. *Texas,* supra, 19, does not establish an unqualified constitutional right to correct jury instructions on any defense the defendant may have. The only relevant issue therein decided was the applicability, in state court proceedings, of the sixth amendment right of a criminal defendant to have compulsory process for obtaining witnesses in his favor.
The defendant has cited a number of cases from other jurisdictions in which the failure of the trial court to instruct on a defense, even in the absence of a request, was held to have been erroneous. Most of these cases, however, are distinguishable from the present case. The Missouri court in *State* v. *Howard,* 615 S.W.2d 498 (Mo. 1981), and in *State* v. *Hegwood,* 558 S.W.2d 378 (Mo. 1977), was obligated by then applicable Missouri rules of criminal procedure to instruct the jury on every defense warranted by the evidence presented, even in the absence of a request. There is no such rule

The defendant is on surer footing with his more limited claim that the trial court, having once determined to instruct the jury on cohabitation, committed plain error by misstating the effect of the governing statutes. Misinterpreting the statutes on cohabitation, the trial court in its instructions expressly and incorrectly precluded any jury consideration of this affirmative defense. It is well established that an instruction containing a misstatement of the law is more likely to be prejudicial than an instruction that contains an omission or an incomplete statement of the law. *Henderson* v. *Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); *State* v. *Kurvin,* supra, 563. Furthermore, we have held that instructions that misstate the statutory defense of self-defense unconstitutionally implicate a defendant's due process right to establish a defense. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1983); *State* v. *Miller,* 186 Conn. 654, 660–61,

---

in Connecticut. The Georgia court in *Jackson* v. *State,* 149 Ga. App. 253, 254–55, 253 S.E.2d 874 (1979), and in *High* v. *State,* 153 Ga. App. 729, 732–33, 266 S.E.2d 364 (1980), required an instruction on a defense even in the absence of a request because the defense at issue was the defendant's *sole* defense. (This rule was later clarified in *Grubbs* v. *State,* 167 Ga. App. 365, 366, 306 S.E.2d 334 [1983]: "A defendant is entitled to an unrequested charge on a particular defense *only* when it is his sole or principal defense and it is supported by the evidence." [Emphasis added.]) The Michigan appellate court in *People* v. *Peoples,* 75 Mich. App. 616, 624, 255 N.W.2d 707 (1977), also focused on the fact that an omitted instruction had the effect of "foreclosing the defendant from his *only* potential excuse for an otherwise admitted homicide." (Emphasis added.) The cohabitation defense in the present case was not the defendant's sole defense. The Massachusetts court in *Commonwealth* v. *Collins,* 374 Mass. 596, 599, 373 N.E.2d 969 (1978), found that a defendant is entitled to an instruction placing the burden of disproving the defense of justification on the commonwealth. In the present case, the defendant had the burden of proving his affirmative defense. Only the California court seems to have adopted the broad rule the defendant urges on us. That court imposes on the trial court a duty to instruct, *sua sponte,* on general principles of law relevant to all issues raised in evidence, including "defenses . . . and on the relationship of these defenses to the elements of the charged offense." *People* v. *Sedeno,* 10 Cal. 3d 703, 716, 518 P.2d 913, 112 Cal. Rptr. 1 (1974). We decline to follow the California court's lead in this case.

443 A.2d 906 (1982). The present case is distinguishable from the cases dealing with self-defense, because cohabitation is an affirmative defense, while lack of justification is an element of a criminal prosecution on which the state bears the burden of proof. See General Statutes § 53a-12; *State* v. *Cassino,* 188 Conn. 237, 241, 449 A.2d 154 (1982). Nonetheless, these precedents demonstrate the seriousness with which we have viewed instructions that misinform the jury about the statutes that govern a criminal defense.

This case falls squarely within the parameters of the plain error doctrine of Practice Book § 3063. As in *State* v. *Burke,* 182 Conn. 330, 332, 438 A.2d 93 (1980), a recent legislative change led the trial court into statutory error. Having noted the recent enactment of § 53a-70b, which imposed criminal liability for sexual assault in a spousal or cohabiting relationship, the trial court overlooked § 53a-67 (b), which preserved the defense of cohabitation for sexual assault for the crime with which this defendant was charged. A charge that demonstrates that the trial court has overlooked the applicable statute justifies consideration as plain error. *State* v. *McCall,* 187 Conn. 73, 88, 444 A.2d 896 (1982); *Stoni* v. *Wasicki,* 179 Conn. 372, 377, 426 A.2d 774 (1979); *Campbell* v. *Rockefeller,* 134 Conn. 585, 588, 59 A.2d 524 (1948); *Schmidt* v. *Manchester,* 92 Conn. 551, 555, 103 A. 654 (1918); see also *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259 (1980). In the interest of justice, taking into account the importance of proper instructions on a defense for which there is an evidentiary foundation; see *State* v. *Cassino,* supra, 243; *State* v. *Rosado,* 178 Conn. 704, 707–708, 425 A.2d 108 (1979); we conclude that the trial court's charge constituted reversible error. The court's mistaken charge on the defense of cohabitation fails to comport with the primary purpose of a charge, which is "to assist the jury in applying the

law correctly to the facts which they might find established." *State* v. *Gabriel,* supra, 419; *State* v. *Sumner,* 178 Conn. 163, 170, 422 A.2d 299 (1979).

The trial court's erroneous instruction on cohabitation requires us to set aside the judgment with respect to the conviction of sexual assault. Although instructional error can sometimes be determined to be harmless, the state has advanced no such argument in this case. Vacating the defendant's conviction of sexual assault obviates discussion of the defendant's second claim of error, that the instruction on cohabitation had the effect of an improper amendment of the information charging him with sexual assault under § 53a-70 (a). The defendant's conviction need not, however, be set aside in its entirety. There has been neither claim nor showing that the court's erroneous instruction on a defense to the crime of sexual assault bore any relation to the defendant's convictions on the other counts of the information, for kidnapping in the second degree and assault in the third degree. In the absence of other error, the defendant's conviction on these other counts must stand.

Because further proceedings on the charge of sexual assault will, however, be required, it is useful for us to consider the defendant's third claim of error concerning alleged evidentiary error related to that count. The defendant alleges that the trial court erroneously restricted the defendant's cross-examination of the victim regarding her prior sexual activities with the defendant. That restriction, the defendant argues, violated both his common law rights and his constitutional rights to confront his accusers.

The defendant sought to cross-examine the victim about the use of inanimate objects and sexual devices in her relationship with the defendant. The defendant argued that such evidence was relevant to the general

credibility of the victim and to the specific issue of her consent to the use of pliers. Defense counsel was permitted to ask the victim: "[W]as there a time . . . two or three weeks before this incident, where [the defendant] used a candle for your sexual gratification with your consent?" The victim replied in the affirmative. In a prior hearing outside of the presence of the jury, the defendant had indicated that he wanted to inquire into the use of other objects and devices. At that hearing, however, when the victim denied the use of any objects other than candles, defense counsel expressly agreed to limit his cross-examination to the use of candles. Despite the court's assurance that it would allow questioning going to the questions of veracity and of resistance, defense counsel stated that he would defer additional exploration of this subject until the defense put on its case. The defense never pursued this issue further.

On this state of the record, the defendant has no basis for complaint about the scope of the victim's cross-examination. The decision to limit the exploration of the use of unnatural sexual objects was a decision made by defense counsel and not by the trial court. Instead of seeking a ruling to which he might take exception, defense counsel abandoned his effort to cross-examine further on this subject. In the absence of a claim by the defendant that his right to cross-examine the victim was in any other way impaired,[10] the defendant has failed to establish that the trial court deprived him of his constitutional right of confrontation. *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Milum*, 197 Conn. 602, 608–609, 500 A.2d 555 (1985); *State* v. *Shindell*, 195 Conn. 128, 140, 486 A.2d 637 (1985).

---

[10] The defendant's cross-examination of the victim, which covered ninety-seven transcript pages, included unrestricted inquiry into the details of the crime, past arguments between the victim and the defendant, and previous sexual relationships between the victim and the defendant.

It may well be that, at a retrial, the defendant will take further steps to provide a proper foundation for this line of questioning. Proper pursuit of the matter may well require the defendant to substantiate his claim with appropriate extrinsic evidence; see *State* v. *Denby,* 198 Conn. 23, 32–33, 501 A.2d 1206 (1985); but even the offer of such evidence will not relieve the trial court of its responsibility to determine what measures it should take to limit the highly prejudicial impact of such cross-examination. See *State* v. *Asherman,* 193 Conn. 695, 718, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Gaynor,* 182 Conn. 501, 508, 438 A.2d 749 (1980); and compare *State* v. *DeMatteo,* 186 Conn. 696, 702–703, 443 A.2d 915 (1982); *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980). Absent such extrinsic support for further inquiry of the victim, if the victim again denies the occurrence of the events alleged, at a new hearing in limine, it would be within the exercise of the sound discretion of the trial court to bar further cross-examination on this issue. See *State* v. *Parker,* 197 Conn. 595, 601, 500 A.2d 551 (1985).

There is no error in the defendant's conviction of the crimes of kidnapping and of assault; there is error in the defendant's conviction of the crime of sexual assault in the first degree, that judgment is set aside and the case is remanded to the trial court for a new trial on that charge.

In this opinion the other judges concurred.